THE EVANSVILLE NATIONAL BANK OF EVANSVILLE, INDIANA, Respondent, v. ADOLPH KAUFMANN et al., Appellants.

A special guaranty contemplates a trust in the person to whom it is addressed, and no cause of action arises thereon, except upon compliance with its conditions by such person; no other person can accept its terms or acquire any advantage therefrom.

Until a right of action has arisen thereon, such a guaranty is not assignable.

A consideration is necessary to render the guaranty valid, and, although it is not essential that it should be expressed in the written contract itself (Chap. 464, Laws of 1863), if it is not so acknowledged it must be proved in order to recover on the contract.

The consideration may be one furnished by the principal to the guarantor or by the promisee either to the principal or to some other person according to the terms of the guaranty.

A guaranty should be construed in conformity with the rule governing the construction of contracts generally ; i. e., so as to accord with the apparent intention of the parties ; and where the language is ambiguous the surrounding cirumstances may be looked at to ascertain the intention ; but when the meaning of the language used is ascertained, the guarantor is entitled to the application of the strict rule governing the contracts of sureties, and cannot be held beyond the plain terms of the contract.

Defendants, who resided in New York city, wrote a letter addressed to B. Bros., manufacturers, doing business in Indiana, as follows: " Any drafts that you may draw on Mr. A. Feigelstock of our city we guarantee to be paid at maturity." The principal named was a commission merchant in New York. Plaintiff, an Indiana bank, discounted certain drafts drawn by B. Bros. on Feigelstock, the letter being produced by the drawers and left with it as security. No bills of lading or consignments of property to the drawee accompanied the drafts, and one of them appeared upon its face to be accommodation paper. In an action upon the guaranty it did not appear that any consideration therefor was paid to defendants by B. Bros. or Feigelstock, or to the latter by B. Bros. Two of the drafts were not paid. In an action to recover the amount thereof, held, that the guaranty was special, and plaintiff, by discounting the drafts, acquired no right of action thereon in its own right ; and, that in the absence of a consideration, no cause of action accrued to B. Bros., and so none passed from them to plaintiff.

It seems that if any cause of action had existed in favor of B. Bros., against defendants, it was assignable and would have passed to plaintiff as equitable assigneee.

Benedict v. Sherill (H. & D. Sup. 219), Duval v. Trask (12 Mass. 155), U. Bank v. Coster (3 N. Y. 203), Russell v. Wiggin (2 Story C. C. 213),

SICKELS — VOL. XLVIII. 35

*Lonsdale* v. *L. Bank* (18 Ohio, 126), *Monroe* v. *Pilkington* (14 How. Pr. 250), *Lawrason* v. *Mason* (3 Cranch, 492), distinguished.

(Argued June 15, 1883 ; decided October 2, 1883.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 25, 1881, which reversed a judgment in favor of defendants, entered upon a report of a referee. (Reported below, 24 Hun, 612.)

This action was brought to recover the amount of two drafts drawn by Bingham Bros., of Evansville, Ind., on A. Feigelstock, of the city of New York, which were discounted by plaintiff at Evansville, and forwarded to New York for acceptance and payment by the drawee, by whom they were dishonored.

Defendants were sought to be made liable under the following letter of credit, which was delivered to and left with defendants, and upon the security of which they discounted the paper :

"NEW YORK, *December* 29, 1874.

" Messrs. BINGHAM BROS., *Evansville, Ind. :*

" DEAR SIRS — Any drafts that you may draw on Mr. A. Feigelstock, of our city, we guarantee to be paid at maturity.

"Truly yours,

"KAUFMANN & BLUN."

The further facts appear in the opinion.

*Charles Edward Souther* for appellants. The guaranty was special, the defendants contracted only with Bingham Bros., and there is no privity between the plaintiff and the defendants. (*Birckhead* v. *Brown*, 5 Hill, 634 ; *S. C.* affirmed, 2 Denio, 375 ; *Barns* v. *Barrow*, 61 N. Y. 39, 42–44 ; *Hayden* v. *Crane*, 1 Lans. 181, 186, 187 ; *Union B'k* v. *Coster's Ex'rs*, 3 Comst. 203, 214 ; *Nat. Mechs'. Bkg. Ass'n* v. *Conkling*, 14 N. Y. Ct. of App. 631, 632 ; *Haydon* v. *Weldon*, 43 N. J. 128, 132–134 ; *King* v. *Batterson*, 13

R. I. 119; *Nat. B'k of Peoria* v. *Diefendorf*, 90 Ill. 396, 407 ; *Taylor* v. *Wetmore*, 10 Ohio, 490 ; *Davis* v. *Clinton, etc., Co.*, 54 Iowa, 60–62 ; *Nat. B'k* v. *Grand Lodge*, 98 U. S. 123.)   The question whether the referee's conclusion is correct or not is subordinate to the question whether " each of the aforesaid drafts was a draft," as between its drawer and drawee ; and the answer to this question is to be determined by the law of this State as the *lex loci* of performance.   (*Hibernia Nat. B'k* v. *Lacombe*, 84 N. Y. 367, 376, 381.)   The foreign law is presumed to be like that of the *lex fori*.   (*Chapin* v. *Dobson*, 78 N. Y. 79 ; *Monroe* v. *Douglass*, 5 id. 447.)   The instruments in suit are not drafts, and a valid claim did not arise thereon upon Feigelstock's default against the drawee.   (*Cook* v. *Saterlee*, 6 Cow. 108 ; *Woods* v. *North*, 84 Penn. St. 409, 410 ; *Bank* v. *Gay*, 63 Mo. 37 ; 1 R. S. [Edm. ed.] 726, § 5 ; *Worden* v. *Dodge*, 4 Denio, 159 ; *Harriman* v. *Sanborn*, 43 N. H. 128, 130 ; *Faulkner* v. *Hart*, 82 N. Y. 418.)

*E. B. Crowell* for respondents.   The letter written and sent by the defendants to Bingham Bros. is to be construed as a general letter, inuring to the benefit of any one, who, like the plaintiffs, upon the credit thereof and in good faith, might buy the drafts drawn thereunder by Bingham Bros. on Mr. A. Feigelstock.   (*Benedict* v. *Sherill*, Lalor's Supplement to Hill & Denio's, 219 ; *Union Bk* v. *Coster's Exrs*,. 3 Comst. 204 ; *Lawrason* v. *Mason*, 3 Cranch, 492 ; *Duval* v. *Trask*, 12 Mass. 53 ; *Mason* v. *Hunt*, 1 Doug. 297, 299 ; *Russell* v. *Wiggin*, 2 Story's C. C. 213 ; 5 Law Rep. 533 ; Story on Bills of Exchange, § 462 ; *Boyce* v. *Edwards*, 4 Peters, 121 ; *Monroe* v. *Pilkington*, 14 How. Pr. 250.)   As between the defendants and such holders of the drafts who took them in the regular course of business and paid full value therefor the guaranty would be construed as strongly against the defendants as the sense of words will admit.   (*Douglass* v. *Reynolds*, 7 Peters, 113, 122 ; *Gates* v. *McKee*, 13 N. Y. 235 ; *Addington* v. *Allen*, 11 Wend. 374.)

*Asa Iglehart* for respondents. The instrument in suit, both as a letter of credit and guaranty, possessed such negotiable qualities as would enable any one negotiating the bills described in it upon its exhibition for the purpose of obtaining credit to recover upon it. (*Russell* v. *Wiggins*, 2 Story, 213, 214; Daniels on Neg. Ins. 672, note 3; *Carnique* v. *Morrison*, 2 Metcalf, 381; *Langsdale* v. *Lafayette Bk.*, 18 Ohio, 126; *Boyce* v. *Edwards*, 4 Pet. 22; 20 Wend. 425; 3 Cranch, 492; Story on Bills, 545, 546; *Burkhead* v. *Brown*, 5 Hill, 634, 646; 2 Denio, 375; *Lamoureux* v. *Hewitt*, 5 Wend. 307; *Watson* v. *McLaren*, 19 id. 557; 26 id. 425; *Miller* v. *Gaston*, 2 Hill, 180; *Chitty* on Bills, 273, 308 [ed. of 1839]; 1 Schouler on Personal Property, 104, 105; *Freeman* v. *Newton*, 3 E. D. Smith, 246; *McKee* v. *Judd*, 12 N. Y. 622; *Quinn* v. *Moore*, 15 id. 432; *Arens* v. *Commw.*, 18 Gratt. 169; *Agra* v. *Masterman's Bk.*, L. R., 2 Ct. App. 390; *In re Blakey Co.*, 3 id. 134; 2 Story's Eq. 1040; N. Y. Code, § 111; Wait's Annotated Code, 1, 11, 115; *Zabriskie* v. *Smith*, 13 N. Y. 322; *McKee* v. *Judd*, 12 id. 622; Pomeroy on Remedies and Remedial Rights, § 147; *Horner* v. *Wood*, 23 N. Y. 350; *First Nat. Bk.* v. *Carpenter*, 41 Iowa, 518.) The guaranty was negotiable. (*Patterson* v. *Crawford*, 10 Ind. 241; *Cole* v. *Mer. Bk.*, 68 id. 355–6; *Parridge* v. *Davis*, 20 Vt. 499; *Small* v. *Sloan*, 1 Bosw. 352; *Merrill* v. *Griswall*, 30 N. Y. 594; *Waldron* v. *Willard*, 17 id. 466; 2 Story's Eq., § 1047.)

RUGER, Ch. J. Guaranties are distinguished in the law as being either general or special. Special guaranties being those which operate in favor of the particular persons only to whom they are addressed, while general guaranties are open for acceptance by the public generally. They are sometimes further classified into those limited to a single transaction and those embracing continuous or successive dealings. (*Gates* v. *McKee*, 13 N. Y. 232; *Church* v. *Brown*, 21 id. 329.)

The liability of the defendants in this case depends upon the solution of the question to which of these classes the guaranty

in suit belongs. If it be regarded as a general guaranty, there is no just defense to this action. If, however, it is a mere special guaranty, although continuous in its character, other questions will arise for consideration. Many of the earlier cases arising upon guaranties, both here and in England, were largely controlled by the question of their negotiability; and it was uniformly held that no action would lie at the suit of an assignee upon a special guaranty because no privity existed between such assignee and the guarantor (*Robbins* v. *Bingham*, 4 Johns. 476; *Walsh* v. *Bailie*, 10 id. 180; Chitty on Bills, 273, 308 [ed. 1839]; *Newcomb* v. *Clark*, 1 Denio, 226; *Birckhead* v. *Brown*, 5 Hill, 634.) This obstacle was removed in this State by the Code of Procedure, which authorized any party acquiring an interest in a guaranty to bring his action and recover thereon, provided a cause of action previously existed upon the contract in favor of his assignor. The real party in interest in such contracts is now entitled to maintain an action for damages arising from a breach of such contract in his own name, although he was not originally privy to it.

In other words the same effect is now given to an equitable that formerly pertained to a legal assignment, and they are now both equally cognizable in a court of law.

It follows that Bingham Brothers could assign to the plaintiff and the latter recover upon any cause of action accruing to them under the letter of credit in question existing against the defendants at the time of the discount of the drafts in suit.

The true distinction between general and special guaranties, as contained in letters of credit, is that upon the faith of a general guaranty any person is entitled to advance money, or incur liability, upon complying with its terms, and can recover thereon the same as though specially named therein. (*Union Bank of Louisiana* v. *Coster*, 3 N. Y. 203.)

In the case of a special guaranty, however, the liberty of accepting its terms is confined to the persons to whom it is addressed, and no cause of action can arise thereon except by their action in complying with its conditions.

Such a guaranty contemplates a trust in the person of the

promisee, and from its very nature is not assignable until a right of action has arisen thereon, which may, like any other cause of action arising upon contract, be then assigned.

The authority of the cases holding that no privity exists between the assignee of a guaranty and the guarantor sufficient to enable the former to maintain an action thereon has thus ceased by force of the provisions of the Code.

Though this be so, the common-law rule applies to contracts of guaranty as well as to other contracts ; that a consideration is necessary to render them valid ; and that, unless such consideration be acknowledged by the contract itself, it is still necessary to prove one in order to recover thereon. (*Leonard* v. *Vredenburgh*, 8 Johns. 29 ; *Bailey* v. *Freeman*, 4 id. 280 ; Brandt on Suretyship, 7.)

It was formerly held that such contracts were void by the statute of frauds unless their consideration was also expressed upon the face of the instrument itself. (*Union Bank* v. *Coster, Ex'r*, 3 N. Y. 211 ; *Newcomb* v. *Clark*, 1 Denio, 226).

But this rule was modified by other cases holding that where the nature of the consideration was fairly inferable from the contract sued upon, or was contained in a written instrument contemporaneously executed and forming a part of the transaction, it would satisfy the requirement of the statute. (*Gates* v. *McKee, supra ; Church* v. *Brown*, 21 N. Y. 315 ; *Douglass* v. *Howland*, 24 Wend. 35 ; *Leonard* v. *Vredenburgh, supra ; Rogers* v. *Kneeland*, 10 Wend. 218.)

The cases of *Brewster* v. *Silence* (8 N. Y. 207), and *Draper* v. *Snow* (20 id. 331), holding a contrary doctrine, have been much shaken, as authority upon this question, by the later cases above cited.

The statute of frauds was amended in this State by chapter 464 of the Laws of 1863, omitting in its re-enactment the provision requiring the consideration of a promise to answer for the debt, default or miscarriage of another, to be expressed in the writing containing such promise.

The effect of this amendment was to dispense with the necessity of such statement in the instrument itself (*Speyers*

v. *Lambert*, 6 Abb. Pr. [N. S.] 309), but it left it still indispensable that a consideration in fact for the promise should exist in order to entitle the promisee to recover thereon. (Brandt on Suretyship, 90.)

Regarding this case, therefore, as unaffected by the questions referred to, its solution seems to depend upon the answer to be made to these two propositions: First, as to whether the guaranty in question is general or special; and second, if it be found to be a special guaranty, whether any good cause of action arose thereon in favor of the persons to whom it was addressed, which has been assigned to the plaintiff in this action. Besides a consideration, it is essential that a contract of this kind should be between proper parties, viz.: a promisor or guarantor; a principal and a promisee; and it is just as essential that such contracts should describe or refer to these parties so as to identify them, either individually or as a class.

It is always competent for a guarantor to imit his liability, either as to time, amount or parties, by the terms of his contract, and if any such limitation be disregarded by the party who claims under it the guarantor is not bound. It follows that no one can accept its propositions or acquire any advantage therefrom unless he is expressly referred to or necessarily embraced in the description of the persons to whom the offer of guaranty is addressed. (*Robbins* v. *Bingham*, *supra*; *Union Bank* v. *Coster*, *supra*; *Church* v. *Brown*, *supra*; *Walsh* v. *Bailie*, *supra*; *Dodge* v. *Lean*, 13 Johns. 508; Brandt on Suretyship, 88; *Bailey* v. *Ogden*, 3 Johns. 399.)

In the case of a special guaranty the consideration necessary to support the promise may be either one furnished by the principal to the guarantor, or by the promisee to either the principal or some third person, according to the terms of the guaranty.

A general letter of credit is addressed to and invites people generally to advance money, give credit, or sell property in reliance upon it, and when this is done the contract is complete, and the acceptor becomes a party to it and may enforce it for his own benefit.

In such case the promisee has, upon the request of the guarantor, furnished the consideration contemplated by the guaranty and brought himself within its terms and the requirements of law. (*Union Bank* v. *Coster*, *supra; Church* v. *Brown*, *supra; Birckhead* v. *Brown*, *supra*.)

To come to the case in hand it will be found that the guaranty neither in its address nor contents refers either directly or indirectly to any other persons than the immediate parties thereto. These parties are Kaufmann & Blun, the guarantors, Feigelstock, the principal, and Bingham Bros., the promisees.

It has been said that the allusion in the letter to the word "drafts" implies the negotiation of these instruments to third persons. This idea we think is not necessarily or generally conveyed by this expression.

Drafts, as used in the collection of debts, are not usually negotiable. The office of a draft is to collect for the drawer from the drawee, residing in another place, money to which the former may be entitled, either on account of balances due or advances upon consignments, and although they may sometimes be used for raising money, that is not the necessary or ordinary purpose for which they are employed.

We might, therefore, well hold that no such doubt or uncertainty appears upon the face of this guaranty as entitles the plaintiff to furnish extrinsic evidence to determine its signification.

The plaintiff, however, claims the right to resort to such evidence to show that the defendants intended or that it had the right to infer that their guaranty was intended for such persons as should advance money upon Bingham Bros.' drafts before their acceptance by Feigelstock.

Some controversy appears by the cases to have formerly existed in respect to the rule governing the courts in the construction of guaranties, whether that should apply which entitled a surety to have his contract strictly construed, or that imposing upon a party using the language the liability of having it interpreted most strongly against him, but the weight

of authority now seems to favor that construction which shall accord with the apparent intention of the parties, in conformity with the rule governing the construction of contracts generally. (*Rindge* v. *Judson*, 24 N. Y. 70; *Gates* v. *McKee*, *supra;* *Dobbin* v. *Bradley*, 17 Wend. 422.)

But when the meaning of the language used in a guaranty is ascertained, the surety is entitled to the application of the strict rule of construction and cannot be held beyond the precise terms of his contract. (*Gates* v. *McKee*, 13 N. Y. 232; *People* v. *Chalmers*, 60 id. 158; *Kingsbury* v. *Westfall*, 61 id. 356.)

When, therefore, the language of a guaranty is ambiguous and does not furnish conclusive evidence of its meaning, we are entitled to look at all of the circumstances of the case and arrive at the intention of the parties from these sources of information. (*Agawam Bank* v. *Strever*, 18 N. Y. 502; Brandt on Suretyship, 106; *Walrath* v. *Thompson*, 4 Hill, 200; Fell's Law of Guaranty, 43; *Gates* v. *McKee, supra;* *Keate* v. *Temple*, 1 B. & P. 158; *Springsteen* v. *Samson*, 32 N. Y. 703; *Karmuller* v. *Krotz*, 18 Iowa, 352; *Hasbrook* v. *Paddock* 1 Barb. 637.)

Assuming, therefore, that there is an ambiguity in this letter requiring explanation, we will examine the case in the light of the general principles which have been stated.

The action is based upon two drafts made by Bingham Bros., of Evansville, Ind., upon A. Feigelstock, of New York, and payable respectively, one for $5,000 sixty days after date, and one for $2,500 fifteen days after sight. These drafts were discounted by the plaintiff at its bank in Evansville, at their respective dates, and the proceeds duly paid to Bingham Bros. Each of them was afterward duly protested for non-acceptance and non-payment by Feigelstock. These drafts belonged to a series of similar character discounted by the plaintiff for Bingham Bros., and were the only ones remaining unpaid by Feigelstock at their maturity.

At the commencement of this course of business Bingham Bros. produced to and left with the plaintiff the letter of credit

upon which this action is founded, and it was delivered as security for the amount intended to be loaned upon such drafts.

No bills of lading or consignments of property by Bingham Bros. to Feigelstock accompanied the drafts, and that for $5,000 appeared upon its face to be an accommodation draft. No notice of these transactions was ever given to the defendants, and it did not appear that they had any knowledge of the several discounts. The letter expressing the guaranty upon which the action is brought is as follows:

"NEW YORK, *December* 29, 1874.

"Messrs. BINGHAM BROS., *Evansville, Ind.:*

"DEAR SIRS — Any drafts that you may draw on Mr. A. Feigelstock, of our city, we guarantee to be paid at maturity.

"Yours truly,

"KAUFMANN & BLUN."

While the letter will be seen to be couched in broad and indefinite terms with respect to the number, amount and character of the drafts referred to, Bingham Bros. alone are addressed. However general may be the description of the subjects guaranteed, the number of persons authorized to accept its terms is not thereby enlarged.

The letter is subject to all of the limitations expressed therein, and also to such as may fairly be implied from its language, and the natural course of business transactions between its several parties. General letters of credit are, from necessity, delivered to the persons who expect to profit by their aid, and are intended to be exhibited by them wherever and whenever assistance is required. The fact of the possession of a letter of credit by a person from whom credit is sought militates against its generality. The absence in this letter of any assurance that the drafts specified should be accepted on presentation seems to imply that sight drafts alone were contemplated by the parties.

So too the absence of any reference to the consideration of this guaranty is significant, and would seem to suggest to a

prudent man the propriety of an inquiry into the situation of the parties, and the nature of the business in which the guaranty was to be used before advancing largely upon the faith thereof. Such an investigation would have enabled the plaintiff to see that it was not justified in drawing the inference which it claims to have done from the language of this instrument.

Bingham Bros. resided and were manufacturers of spirits at Evansville, in the State of Indiana, remote from the guarantors and the drawee of the drafts. Feigelstock was a merchant residing in New York engaged in the business of receiving and selling on commission, goods consigned to him by third parties.

The plaintiff was a bank doing business in the State of Indiana, and the defendants were merchants in the city of New York. At the date of the guaranty these various parties were strangers to each other, except that the plaintiff and Bingham Bros. resided at the same place, and had previously had business transactions together. There is no evidence as to the relations existing between the defendants and Feigelstock, but it is claimed in the answer and was offered to be proved on the trial that they were strangers to each other, and that the guaranty was given by the defendants as a favor to a person who was in their employ, and who was a relative of Feigelstock.

There would seem to be no motive reasonably inferable from such a situation and relationship sufficiently powerful to induce the defendants to lend their unlimited credit for the benefit and advantage of Bingham Bros. alone. The contention of the plaintiff leads to the proposition that it had a right to infer that Bingham Bros. were authorized by the defendants to go to any place and with any person contract to bind the defendants for unlimited sums. Under such a construction the defendants could never revoke this authority, for it would be practically impossible to reach by notice all of the persons who might be applied to for advances upon this letter.

To uphold this judgment we are required to hold that the plaintiff had the right to infer from the language of the letter, and the circumstances of the case, that the defendants, without any apparent motive for so doing, had clothed Bingham Bros. with irrevocable authority to use their names in borrowing money at remote and multiplied points, for unlimited amounts and unrestricted periods of credit.

Certainly, if the plaintiff believed this, it was not justified in placing much reliance upon the continued responsibility of persons transacting business in so reckless a manner.

A transaction of such a character would be so improvident and unnatural that to establish it in any case should require the strongest evidence, but especially so when it is claimed that such powers have been conferred upon entire strangers.

The unnatural confidence in others, and the careless assumption of obligations which such a course of business would imply, is so unusual as to justify the requirement that if such an authority was intended to be conferred it should have been expressed in clear and unequivocal language.

It is obvious that neither Feigelstock nor Kaufmann & Blun could have derived any benefit or advantage from the discount of bills whose proceeds were, as appears from the face of the transaction, intended for the sole use of Bingham Bros.

Even if the relation of consignor and consignee existed between Bingham Bros. and Feigelstock, we do not think the usual course of business between such parties justifies the assumption that the use of accommodation paper for either limited or unlimited amounts is the necessary or usual accompaniment of such a connection. On the other hand, if we consider this letter as intended to furnish a credit to Feigelstock with the manufacturers and consignors of property in which he dealt, it would satisfy the apparent object of the letter, and the transaction would assume a natural and reasonable character such as pertains to the ordinary and usual course of business among commercial men.

There would necessarily be a limit to such a course of business, and the liability of the defendants would be modified by the transfer of property to correspond with the amount of the obligation assumed, and creating a liability which might be safely and reasonably incurred. Of course, if the defendants have signed a guaranty, either general or special, upon a sufficient consideration, by which they have unqualifiedly promised to become liable for the payment of all such drafts as Bingham Bros. might thereafter draw on Feigelstock, their

liability, however comprehensive, would not be affected by its imprudence.    But such is not the contract under consideration.

We are, therefore, of the opinion, from the fact that the letter was addressed to Bingham Bros. alone, the absence of any allusion to its consideration or the negotiability of the drafts therein referred to, and a consideration of the situation and relation of the parties, that the intention could not· fairly be imputed to the defendants of making the guaranty contained in the letter general and open for acceptance by any one who might choose to comply with its terms.

We have been unable to find any case which either requires or authorizes the classification of this letter as a general guaranty.    In each of the numerous cases cited in which the instrument considered was held to be a general guaranty, it was either addressed generally or the guaranty contained inherent evidence that it was intended to be used in obtaining credit wherever it was needed.

In the case of *Benedict* v. *Sherill* (Hill & Denio's Sup. 219), the letter was addressed to a clerk in favor of a country merchant visiting New York to purchase a supply of goods for his trade, and stated, " I will guarantee the payment of such debts as he may contract for the purchase of goods."    It was held that this letter contemplated different purchases of different persons, and could not have been intended for the person addressed, as he had no goods to sell.

The case of *Duval* v. *Trask* (12 Mass. 155) is like that last cited.

In *Union Bank* v. *Coster*, the letter was open and unaddressed, and expressly contemplated the negotiation of the drafts referred to therein by some bank for the benefit of the persons having possession of the letter.

In *Russell* v. *Wiggin* (2 Story's C. C. 213), the court said that an action could be maintained by a person advancing money upon " a letter of credit written by persons *who are to become the drawees of bills*, drawn under it, promising to accept such bills when drawn, which letter, although addressed to the persons who are to be the drawers of the bills, *is designed to*

*be shown to any person or persons whatsoever."* Here it is evident that stress is laid upon the character of the letter, as showing that it was designed for the persons advancing money upon the faith of the letter.

The case was that of a letter given by Wiggins to the master of a vessel sailing from Boston to India to establish a credit for him in England, and bore inherent evidence that it was intended for third persons.

In *Lonsdale & Gray* v. *Lafayette Bank of Cincinatti* (18 Ohio, 126), the guaranty required the drafts to be accompanied by bills of lading of shipments to the address of the guarantors. Upon the shipment of the goods and the attaching of bills of lading to the drafts, a cause of action arose in favor of the promisee in the guaranty which could be lawfully assigned to a third party who could bring his action upon the assigned claim as we have already stated. The case is not an authority upon the question as to whether the guaranty is general or special.

The case of *Monroe & others* v. *Pilkington & others* (14 How. Pr. 250) is referred to as a strong case for the plaintiff, and does, probably, come nearer sustaining its position than any other cited. The case is a Special Term case, and the question arose on a demurrer to the complaint. The letter there under discussion is plainly to be distinguished in material points from the one in the case at bar. It was from a firm residing in England to another in this country, and evidently referred to and intended to promote the business of selling at New York, exchanges upon Liverpool. The inference was drawn by the court from the letter and the course of business that it was intended to be exhibited to persons buying exchange upon Liverpool, and thus give the person addressed additional facilities to carry on the business of selling exchange.

In *Lawrason* v. *Mason* (3 Cranch, 492), the letter, although addressed to the person for whom the guarantor offered to become security, was by its express terms intended for the per-

son who should furnish on credit the property referred to in the letter, and could have no other office to perform.

On the other hand, it was said by Judge Comstock, in *Church* v. *Brown* (*supra*), that " An undertaking by one person to be responsible for goods to be delivered to another is in effect a request to deliver the goods. It is in law no more and no less than a letter of credit, general and particular, according as it may or may not have a particular address."

The case of *Birckhead* v. *Brown*, not only on account of the reasoning by which it is supported, but because it is the decision of a court distinguished for learning and ability, is entitled to great weight, although some of the reasons urged in support of the judgment are no longer tenable, owing to the provisions of our Code and the principles adopted in later cases   Brown Brothers & Co., of New York, addressed a letter to W. & J. Brown & Co., of Liverpool, at the request of Smith & Town, stating that they desired " to open a credit for £10,000, say ten thousand pounds sterling uncovered at any one time, in favor of Mr. James Demarest, to be negotiated by him in Rio de Janeiro by drafts on you at sixty days sight." Demarest was the commercial agent of Smith & Town, and represented them at Rio de Janeiro. Upon the faith of this letter Birckhead & Co. discounted drafts at the request of Demarest, and upon their non-payment by W. & J. Brown & Co., brought an action against the guarantors. Bronson, J., delivering the opinion of the court, says : " These letters have been divided into two classes, general and special. They are general when addressed to any or all persons without naming any one in particular. They are special when addressed to a particular individual or firm." "When the letter is special, or in other words, addressed to a particular individual, he alone has the right to act upon and acquire rights under it. If any one else attempts to accept and act upon the proposition contained in the letter, he comes in as a mere volunteer, and he cannot by thus thrusting himself forward create any legal obligation on the part of the writer." This case was much more favorable for the plaintiff than the one at bar, for this letter

seemed to contemplate the negotiation of the drafts at Rio de Janeiro with some third party.

The strictness with which parties assuming to act upon the faith of a guaranty have been held to its precise terms is illustrated in *Barns* v. *Barrow* (61 N. Y. 39 ; 19 Am. Rep. 247), where it was decided that a guaranty running to a member of a firm for goods to be sold by him, did not inure to the benefit of the firm of which he was a member, although they delivered the goods described in the guaranty. (See also the cases therein referred to.)

We have thus seen that no cause of action accrued to the plaintiff upon the guaranty, for the reason that it is a special guaranty upon which the party addressed alone could act and acquire a cause of action. Some confusion has arisen in the consideration of this case from an omission to regard the obvious distinction existing between a cause of action accruing to the plaintiff in its own right, upon the discount by them of such drafts, and one arising in favor of Bingham Bros. either prior to or simultaneous with such discount of which the plaintiff now seeks to avail itself as their equitable assignee. Different considerations are required to support these different contracts. The court below reversed the judgment entered upon the report of the referee in favor of the defendants upon the grounds stated in the opinion as follows : " In the view insisted upon by the respondent the letter of credit in question in this case was a special letter or promise to Bingham Bros. In that view it was a valid contract, for it would be so read by the law as to supply the consideration so far as necessary under the former statute of frauds. ' If you will draw on him I will guarantee that any draft you may draw on Mr. A. Feigelstock of our city will be paid at maturity,' or it would be regarded an original promise under the case of *Gates* v. *McKee* (13 N. Y. 235), and the defendants held to the established construction of such instruments."

The court here seems to imply that there are two grounds upon which the action could be maintained, viz. : because the promise was an original as distinguished from a collateral one,

and secondly, because a cause of action accrued to Bingham Bros. upon making the drafts in suit, and that cause of action passed to the plaintiff as their equitable assignee by the delivery of the letter to them, and their discount of the drafts. We do not think that either of these grounds can be sustained.

It is entirely immaterial whether this guaranty be regarded as an original or collateral contract. Both equally required a consideration to support them, and the distinction between them is important only as affected by the statute of frauds, a collateral contract to pay the debt of another being required by that statute to be in writing, while an original undertaking is valid even if made by parol. No question arises respecting the validity of this promise, except in regard to its want of consideration. If, therefore, we could call this an original undertaking, the promise having, as we have seen, been made to Bingham Bros. alone, it still lacks the indispensable requirement of a consideration to support it.

This consideration must be proved, and a presumption of its existence can no more be indulged in to support the action than the presumption of any other fact material to the existence of a cause of action. Commercial and business paper generally specifies a consideration upon its face, and a defense thereto on the ground of a want of consideration must be supported by affirmative proof of such fact, but when the paper itself does not state a consideration the omission must be supplied by affirmative proof on the part of the holder, or he cannot recover thereon. (1 Parsons on Contracts, 175.) No consideration is referred to in this letter, and the drafts are the act of Bingham Bros. alone, and are evidence of no fact stated therein as against any one, except the drawers. But even the drafts do not purport to be drawn for value.

In every aspect in which this transaction can be regarded Bingham Bros. appear as the makers of the drafts for their own accommodation, and as such personally liable to all who thereafter become parties thereto.

We have no difficulty in regarding the plaintiff as the equitable assignee of any cause of action existing against the de-

fendants in favor of Bingham Bros. As has been already stated, if any such cause of action arose, it was assignable and must be considered to have passed to the plaintiff by the delivery of the guaranty and the payment by it of the proceeds of the drafts to Bingham Bros. It thereby became the equitable owner of such cause of action and of such an interest in the letter of credit as would enable it, under our Code, to maintain an action against the defendants. But the question is presented, did any such cause of action ever arise? We have been unable to discover any ground upon which such a claim can be plausibly sustained. The letter certainly contains no reference to any consideration received by its writers, and the proof shows none advanced by Feigelstock to them or by Bingham Bros. to either Feigelstock or the guarantors.

Upon the very face of the transaction Bingham Bros. drew their drafts for their own benefit and contemplated the acceptance by Feigelstock for their accommodation. Taking the strongest view against the defendants which the case is susceptible of, they occupied simply the position of proposed accommodation guarantors of the contemplated accommodation acceptor of Bingham Bros.' drafts; and it certainly cannot be claimed that they thereby incurred any liability to the party for whose accommodation they had guaranteed such obligations. (*Atkinson* v. *Manks*, 1 Cow. 692; 1 Parsons on Contracts, 184; *Thurman* v. *Van Brunt*, 19 Barb. 409; Daniels' Negotiable Instruments, § 189.) Even if the letter of credit be read as paraphrased by the court below, it falls far short of establishing a consideration moving to the defendants.

It cannot be seriously claimed that a proposition, either written or oral, made by one person to another, agreeing to guarantee the payment of any draft which the other might draw, furnished a sufficient consideration for the promise. Such a request is implied in all accommodation papers as between the parties thereto; and if this were held to import a sufficient consideration, it would destroy all distinctions between accommodation and genuine business obligations. But this letter of credit, as read by the court below, would not confer a cause of

action upon third parties, even if it had been addressed to them, without proof that they had parted with value upon its faith. In all of the cases cited where guarantors have been held liable, even to third persons, upon such instruments, the letter embraces either an express or implied request to such persons to advance value upon the faith of the paper therein described, and it is because they have parted with value upon such request that the liability of the promisor to them is predicated. If no liability is incurred in favor of a third party unless he has parted with value, much less can it be claimed that it is in favor of an original party to the contract, from whom, as is shown affirmatively, no consideration whatever proceeded. We are, therefore, of the opinion that the plaintiff is not entitled to maintain this action.

The order of the General Term should be reversed, and the judgment rendered upon the report of the referee affirmed, with costs.

All concur, except DANFORTH, J., not voting.

Order reversed, and judgment affirmed.