CHARLES P. BRITTON and RAYMOND H. FIERO, Respondents, *v.* HARRIET L. MARKS, Appellant.

*Written guaranty of a stockbroker's account against a customer — when the word "account" is ambiguous and oral proof is competent to explain its meaning — effect of the guaranty having been prepared by the stockbroker.*

A firm of stockbrokers, who were carrying on margin stocks for the account of one Julia C. Isham, having demanded additional margin from Mrs. Isham, Harriet L. Marks, who was familiar with the relations existing between the stockbrokers and Mrs. Isham, signed and delivered to the stockbrokers the following guaranty; "I also beg to advise you that for and in consideration of your carrying her (Mrs. Isham's) account without further margin from her, that I will guarantee you against any loss that you may incur thereby, and will agree to respond to your request for funds to cover any deficiency that may exist in her account with you."

*Held,* that the use of the word "account" in the guaranty rendered it ambiguous, and that in an action brought to recover thereon it was improper for the court to exclude oral testimony offered by the guarantor for the purpose of showing that the guaranty was limited to the specific stock which, at the time the guaranty was executed, was held by the stockbrokers for Mrs. Isham;

That the guaranty having been prepared by the stockbrokers, the ambiguity therein did not lie at the guarantor's door.

APPEAL by the defendant, Harriet L. Marks, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Kings on the 17th day of June, 1904, upon the verdict of a jury rendered by direction of the court after a trial at the Kings County Trial Term.

*D. J. Haynes,* for the appellant.

*J. Orlando Harrisson,* for the respondents.

JENKS, J.:

The action is upon a guaranty. The plaintiffs, who are stockbrokers, demanded more margin from their customer, Mrs. Isham, with whom they had been dealing for some time, and for whom they then held certain shares of stock bought by them on her account. The defendant, who then knew of the previous and present relations of the brokers and this customer, subscribed and delivered to the plaintiffs this writing: "Referring to the $1,000 which

SECOND DEPARTMENT, MAY, 1905.　　　　[Vol. 105.

I sent you in October, 1902, I beg to advise you that I have no further interest in the said money, and that Mrs. Juliet C. Isham is the only person to whom you are accountable for the same. I also beg to advise you that for and in consideration of your carrying her account without further margin from her, that I will guarantee you against any loss that you may incur thereby, and will agree to respond to your request for funds to cover any deficiency that may exist in her account with you."

Upon the trial, the defendant offered oral testimony with the purpose of showing that the guaranty was limited to the specific stocks which were then held by the plaintiffs for Mrs. Isham. The testimony was excluded, under exception, upon the objections that it was incompetent and immaterial, and as tending to vary the terms of a written instrument.

I think that the rulings were fatal to the judgment. If the guaranty was ambiguous and did not furnish evidence conclusive of its meaning, such evidence was admissible. (*Evansville National Bank* v. *Kaufmann*, 93 N. Y. 273, 291; *Powers* v. *Clarke*, 127 id. 417, 424; *McShane Co.* v. *Padian*, 142 id. 207; Brandt Sur. & Guar. [3d ed.] § 107, and notes.) The ambiguity is found in the word "account." SHAW, C. J., in *Whitwell* v. *Willard* (1 Metc. 216, 217) says that "the primary idea of account, *computatio*, whether we look to the proceedings of courts of law or equity, is some matter of debt and credit, or demands in the nature of debt and credit, between parties." By commercial metonymy, it may describe the business or dealing between parties which requires the keeping of an account thereof. (Vide Cent. Dict. "Account," where it is defined as a course of business dealings or relations requiring the keeping of records.) Of this word, it has been said that it has no defined legal meaning; that it has various meanings and shades of meaning, and is used in various ways; that it has a wide and varied signification; that it has no inflexible technical meaning. (*Rensselaer Glass Factory* v. *Reid*, 5 Cow. 587, 593; 1 Words & Phrases Judicially Defined, 86 *et seq.*, title, "Account," citing many cases; *Van Orden* v. *Tilden*, 13 Daly, 396, 397; *National Bank* v. *Purifier Co.*, 102 Mich. 462, 467.) Under the circumstances the word might have been used aptly to refer either to the carrying of the specific stocks then held for the customer, or of

those stocks together with all stocks which might be purchased for her under her orders so long as the guaranty continued. In *National Bank* v. *Purifier Co.* (*supra*) the court say : " If the word ' account ' had an inflexible technical meaning, and that were the one contended for, there would be force in this contention. But it has not." And after citing the definitions of Webster and Bouvier,* the court continued : " Parol proof is, therefore, admissible to show in what sense the parties used it, and what they understood to be included within it. To this proof and the surrounding circumstances the court will look to ascertain the intention of the parties and determine in what sense they use words of flexible meaning." One of the plaintiffs testifies that he never at any time after the signing of this contract received any permission from the defendant to change these stocks, and it may be that if the ambiguity had been resolved so that the guaranty was limited in accord with the contention of the defendant, a different result would have been reached. Any ambiguity in this guaranty, in the words of VAN BRUNT, P. J., in *Cochran* v. *Kennedy* (10 Daly, 346), " does not lie at the defendant's door," inasmuch as it was prepared by the plaintiffs. We do not now decide that even if the proper interpretation of the contract is that of the defendant, she thereby is discharged from the liability asserted by the plaintiffs, but we limit our decision to the conclusion that parol evidence was admissible in aid of the interpretation of the guaranty.

The judgment is reversed and a new trial is granted, costs to abide the event.

HIRSCHBERG, P. J., BARTLETT, WOODWARD and MILLER, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the event.

---

* See Webster's Int. Dict. 13 ; 1 Bouvier's Law Dict. (Rawle's Rev.) 63. — [REP.