ASSETS REALIZATION COMPANY, Appellant, *v.* PHILIP W. ROTH, Respondent.

Fourth Department, July 3, 1917.

Guaranty — construction of guaranty and liquidation agreements —banks and banking — transfer of assets by one bank to another under a liquidation agreement — liability of stockholders of first bank under guaranty agreement upon dissolution of second bank before completion of liquidation — special guaranty.

A liquidation agreement made by the officers and directors of a bank with another bank should be read together with a guaranty agreement executed at the same time in order to ascertain the intent of the parties to the latter.

An agreement by the officers and directors of a bank to indemnify another bank against loss under an agreement of liquidation, to the extent of the stock held by said officers, s a special guaranty to the other bank and to no one else, and is not an original agreement of indemnity, but is collateral to the pr mary liability of the assets pledged to the other bank under the liqu dation agreement, and is to be strictly construed, and gives the parties thereto the rights of sureties, so that upon the dissolution of the other bank, in proceedings by the Attorney-General rendering the performance of its duties under the liquidation agreement impossible, the parties to the guaranty agreement are relieved from liability thereunder.

Hence, a complaint in an action by the assignee of the receiver of the other corporation against one of said directors upon the guaranty agreement should be dismissed.

The position of the parties to the guaranty agreement as sureties is not destroyed or weakened by the fact that they had some personal interest to serve in the liquidation, it appearing that they held little more than one-fourth of the stock of their bank.

APPEAL by the plaintiff, Assets Realization Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 27th day of November, 1916, upon the verdict of a jury rendered by direction of the court dismissing the complaint, and also from an order entered in said clerk's office on the same day granting defendant an extra allowance of costs in the amount of $954.46.

The action is to recover of defendant $21,200, with interest from September 28, 1908, upon a guaranty agreement as follows:

" WHEREAS, it has been thought desirable by the officers and directors of the Metropolitan Bank, a banking corporation created and existing under the laws of the State of New York, that the said bank shall go into voluntary liquidation.

" AND WHEREAS, such officers and directors have requested The German Bank of Buffalo, New York, to undertake such liquidation, and in order to induce said German Bank so to do have agreed to furnish to said German Bank a guarantee against loss, as set forth. in the agreement of liquidation, dated August    , 1901,

" *Now, therefore,* in consideration of the premises and of one dollar to us and each of us in hand paid by The German Bank, the receipt whereof is hereby acknowledged, we, the undersigned, all of Buffalo, New York, do hereby covenant and agree each for himself and not for the other, to and with the said The German Bank that we will at all times hereafter keep and save harmless and indemnify the said The German Bank of from and against all loss, damage or injury which it may in any manner sustain by reason of any and every advance which it may make pursuant to the aforesaid agreement, and of and from all costs or expenses that may in any manner grow thereout.

" This indemnity, however, shall not render any one of the subscribers hereto liable for a greater sum than that set opposite his own name hereunder.

" Witness our hands and seals this 10th day of August, 1901.

| | |
|---|---|
| " JOSEPH KAM [L. s.] | $1,000 00 |
| " JACOB DILCHER | 18,700 00 |
| " P. W. ROTH. | 21,200 00 |
| " MOSES SHIRE [L. s.] | 3,500 00 |
| " ANTHONY  NEUPERT [L. s.] | 2,000 00 |
| " JNO A. KESSEL [L. s.] | 1,000 00 |
| " HENRY P. HOUCK [L. s.] | 1,000 00 |
| " C. GROBEN | 1,000 00 |
| " HENRY W. WENDT | 5,300 00 |
| " CLARENCE M. HOWARD | 2,500 00" |

This agreement was executed concurrently with an agreement between the Metropolitan Bank and the German Bank, which provided for the advancement by the German Bank to the Metropolitan Bank of sufficient money to pay the

depositors of the Metropolitan Bank, amounting to $782,000, for the pledge to the German Bank of all the assets of the Metropolitan Bank as security for its advances for the liquidation of the affairs of the Metropolitan Bank by the German Bank with the assistance of the officers of the Metropolitan Bank, for the transfer of the depositors' accounts from the Metropolitan Bank to the German Bank, so far as that could be accomplished, and for the discontinuance of the banking business of the Metropolitan Bank. A copy of this agreement is printed in full in the report of the case of *Assets Realization Co.* v. *Howard* (211 N. Y. 432–435). Each of the persons who signed the guaranty agreement was a director of the Metropolitan Bank and was a stockholder to the amount set opposite the signature of each. They were not, however, all the stockholders.

In part performance of the liquidation agreement the German Bank did advance the money necessary to pay the depositors, did take possession of all the assets of the Metropolitan Bank, and did proceed with the liquidation from August 10, 1901, to December 21, 1904, when, in an action by the Attorney-General brought for its dissolution, it was adjudged to be insolvent, its charter was annulled, its assets directed to be distributed, and one Albert J. Wheeler was appointed its permanent receiver. Prior to that time the German Bank had paid the depositors and for that purpose had advanced $795,232.48.

The nominal or face value of the assets of the Metropolitan Bank which it took into its possession was over $1,000,000. From these assets it had realized $671,831.26, and the face value of the remaining assets still unliquidated was over $350,000.

Prior to this judgment of dissolution and on July 16, 1903, the German Bank recovered a judgment by default against the Metropolitan Bank for $237,271.77, which sum was claimed to represent the amount it had advanced to pay depositors, with interest thereon, less the sum it had realized from the assets, together with a note of the Metropolitan Bank of $50,000, which it had discounted prior to August 10, 1901, and the $20,000, which it was to receive for its services by the terms of the liquidation contract. At this time there remained a considerable amount of the assets of the Metro-

politan Bank unliquidated. The object which the German Bank had in view in the recovery of this judgment seems to have been to lay the foundation for an action by it against the stockholders of the Metropolitan Bank to enforce their statutory and constitutional liability in case the remaining assets proved insufficient to pay the balance due to it. At the time of the appointment of Wheeler as receiver of the German Bank, he took possession of all its assets, together with the remaining unliquidated assets of the Metropolitan Bank. He realized from some of these assets, brought an action to recover of the stockholders of the Metropolitan Bank on account of their supposed liability to the German Bank to make good to it for the deficiency in assets to reimburse it for its advances, and finally sold the remaining assets, together with this supposed cause of action against the stockholders, to the plaintiff in this action. Thereupon this plaintiff continued to realize as much as it could from the remaining assets until September 9, 1908, when it sold the then remaining assets at public sale, thus, as it claims, completing the liquidation.

After the purchase by plaintiff of the assets of the German Bank, it procured itself to be substituted as plaintiff in the action which the receiver had brought against the stockholders of the Metropolitan Bank, and prosecuted that action, which was finally disposed of by the Court of Appeals in June, 1914, as appears from the report of the case at 211 New York, 430. The conclusion reached was that the liquidation agreement between these two banks was not intended to and did not create a liability on the part of the Metropolitan Bank to pay to the German Bank any deficiency in the amount of the assets taken over by the German Bank to reimburse it for its advances.

The present action was begun in September, 1914.

*Strebel, Corey, Tubbs & Beals* [*Carlos C. Alden* and *Warren Tubbs* of counsel], for the appellant.

*Lewis & Carroll* [*W. C. Carroll* of counsel], for the respondent.

FOOTE, J.:

The ground upon which a verdict in favor of defendant was directed is that by the contract between the two banks

the liquidation was to be performed and completed by the German Bank; that defendant and his co-obligors on the guaranty agreement were entitled to such complete performance by the German Bank before they became liable and that performance by its receiver, or assignee, did not fulfill the contract; also that the guaranty was to the German Bank alone and was not assignable, or at least until after complete performance by it.

These same grounds are urged here to sustain the judgment. No doubt the guaranty agreement and the liquidation agreement should be read together to ascertain the intent of the parties to the former. Without quoting the liquidation agreement in full it will be sufficient to summarize the provisions to be performed by the German Bank. The agreement begins with recitals to the effect that it has been thought desirable by the officers and directors of the Metropolitan Bank that it should go into a voluntary liquidation and thereby avoid the expenses incident to a receivership, and that party of the second part (German Bank) is willing to undertake such liquidation upon the terms thereinafter stated. The agreement then provides that the Metropolitan Bank pledges to the German Bank " all and singular its assets, property and effects, of every name, nature and kind, as security for the advance hereinafter specified." The German Bank agrees that it will advance to the Metropolitan Bank sufficient moneys to pay all its depositors in full; also such sums as shall be needed for the purpose of carrying certain real property in the city of Buffalo owned by the Metropolitan Bank, but subject to incumbrances, but not including the principal of these incumbrances. For all these advances the German Bank is to receive interest at the rate of six per cent per annum until reimbursed, and the sum of $20,000 " for its services in the matter of such liquidation." It agrees to use due diligence in the management of the property so pledged to it and in the conversion of the assets, the same to be made as rapidly as can be done without undue sacrifice, and its board of directors is at all times to have the controlling voice as to the method of such conversion. Mr. Dilcher, the president of the Metropolitan Bank, is to be employed to assist in the conversion of the assets upon a salary at the rate

of $4,000 per year to be paid out of these assets, as are also the necessary attorneys' fees which may be incurred. Also, " Each of the parties shall devote its best energies to the conversion of such assets as speedily as possible, having due regard to the avoidance of sacrifice with respect thereto." The German Bank is given the custody of the books and papers of the Metropolitan Bank and the latter is to receive no further deposits, and agrees that the influence of its officers shall be directed to secure to the German Bank the accounts of its depositors. No receivership of the Metropolitan Bank is to be applied for without the consent of the German Bank, " nor shall any of the assets handed over to it or pledged to it be taken from its possession, except through conversion, until it shall have been fully paid for all sums theretofore advanced by it, including interest thereon and its compensation as hereinbefore fixed." The Metropolitan Bank agreed to change its place of business to the banking office of the German Bank. The final clause is this: " Eleventh. The party of the first part [Metropolitan Bank] agrees that it will procure and deliver to the party of the second part a proper guaranty of certain of its directors and stockholders against any and all loss which it may in any wise sustain by reason of any advance by it made, pursuant to this agreement. No such guaranty shall render any one director liable for the engagement of another, nor for more than the par value of his stock." Both agreements bear date August 10, 1901.

At the time of the appointment of the receiver of the German Bank, December 21, 1904, there had been realized from the liquidation $671,831.26, and it had advanced to pay depositors $792,284.12. The receiver thereafter realized $3,459.26, and the plaintiff after it became purchaser of the German Bank assets realized the further sum of $34,122.50. The final disposition of assets took place on October 13, 1908, when plaintiff sold what remained at public sale and realized therefor $5,000.

Both parties seem to concede that upon the passing of the German Bank into the hands of a receiver and its dissolution the liquidation provisions of the contract came to an end and were thenceforth impossible of performance, that the services contracted for were those of the German Bank alone, and that no receiver or assignee could take its place or

fulfill its obligations. Assuming that to be so, the question arises as to the effect of the civil death of the German Bank upon the liability assumed by the defendant and his associates under the guaranty agreement.

Defendant contends that he became absolutely discharged from liability, that the paper he signed was a special guaranty running to the German Bank alone, that under it he could not be made liable until a complete performance by the German Bank and a complete liquidation by it and no one else of the Metropolitan Bank assets.

On the other hand, it is the contention of the plaintiff that the guaranty agreement was not a technical guaranty but an original promise to indemnify, or in the nature of insurance, which would not be released by the dissolution of the German Bank, or if construed as a technical guaranty, still that defendant and his associates were not entitled to be relieved from liability by the application of technical rules pertaining to mere voluntary sureties or guarantors, because they were stockholders and directors of the Metropolitan Bank, having a personal interest in the economical and efficient liquidation of its assets, whereby a surplus might be realized to them as stockholders or their statutory and constitutional liability as stockholders for debts of the bank avoided or minimized.

The question is not free from difficulty, but we have reached the conclusion that defendant's contentions should be sustained.

At the time of the dissolution of the German Bank it had no cause of action against defendant or his coguarantors. Its receiver acquired no more than it had. He acquired even less for he did not step into its shoes as liquidator and his only right to deal with the assets or even to their possession was because of the right of the German Bank as pledgee to which he no doubt succeeded. As liquidator the German Bank was vested with a greater discretion and latitude in dealing with the assets than a mere pledgee who could dispose of uncollected assets only by public sale and who is otherwise limited and controlled in his action by statute. As the receiver did not have the wider powers and greater discretion of liquidator, he could not and did not transfer any such powers to plaintiff. Those powers have, therefore, never

been exercised over these assets since the powers of the German Bank came to an end. An important, and what defendant has a right to regard as an essential part of the contract between the two banks has not been performed and is now impossible of performance. Assuming, as we do, that the instrument which defendant signed is a special guaranty to the German Bank and to no one else, that it is not an original agreement of indemnity but collateral to the primary liability of the pledged assets, we think the contract is to be construed *strictissimi juris* and that defendant has the rights of a surety. He is entitled to strict performance of the liquidation contract before he can be subjected to liability. His guaranty is that the assets will be sufficient to reimburse the German Bank for its advances, provided they are handled, nursed and finally liquidated by it with the aid of its organization and resources and the advantage of the new relation it was expected to sustain as bankers for the persons owing the obligations to be liquidated. Defendant may well have assumed that debtors so situated would make greater effort to pay the German Bank than a receiver or a purchaser on speculation. The case is in principle like *Evansville Nat. Bank* v. *Kaufmann* (93 N. Y. 273). Nor is defendant's position as surety destroyed or weakened by the fact that he had some personal interest to serve in the liquidation. His interest and that of his cosureties as stockholders was relatively small. Altogether they had little more than one-quarter of the shares of the Metropolitan Bank. They assumed a possible liability, nearly three-fourths of which would have fallen upon the other stockholders but for these contracts. In this respect the case is to be distinguished from those where similar contracts made by the sole or principal owners of corporations have been held not to entitle them to the rights of sureties because made for their own benefit. (*Winne* v. *Mehrbach,* 130 App. Div. 329; *Guardian Trust Co.* v. *Peabody,* 122 id. 648; affd., 195 N. Y. 544.)

We think the case was rightly disposed of at the trial, and that the judgment and order should be affirmed.

All concurred.

Judgment affirmed, with costs.