[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/15/98
THOMAS  K. KAHN
CLERK

_____

No. 96-7035
_____

D. C. Docket Nos. CV-95-AR-329-W
94-70883, 94-70537-BKC

IN RE: XYZ OPTIONS, INC.

Debtor.

DONALD DIONNE, as Trustee of the Estate
of XYZ Options, Inc.,

Plaintiff-Appellee,

versus

WILLIAM MUSCARELLA; FIRST ALABAMA CAPITAL,

Defendants-Cross-defendants,

SCOTT M. SPANGLER; JEAN G. SPANGLER,

Defendants-Cross-defendants-Appellants,

THE SCOTT M. SPANGLER CHARITABLE TRUST,

Defendant-Appellant,

NORTHERN TRUST BANK OF ARIZONA, N.A.,

Defendant-Cross-claimant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____
**(September 15, 1998)**

Before ANDERSON and BLACK, Circuit Judges, and MOORE*, Senior U.S. District

Judge.

ANDERSON, Circuit Judge:

The primary issue in this appeal is whether § 5-116(2) of the Uniform Commercial Code ("UCC") precludes a valid assignment of the proceeds of a letter of credit when the assignment occurs at a time when the performance of the conditions of the credit has already occurred, i.e., at a time when the right to payment under the letter of credit has already been earned. This issue arises as part of a larger litigation between Plaintiff-Appellee, Donald Dionne ("Trustee"), as Trustee for the bankruptcy estate of XYZ Options, Inc. ("XYZ"), and Defendants-Appellants, Scott M. Spangler, Jean G. Spangler, and the Scott M. Spangler Charitable Remainder Unitrust ("the Spangler entities").[1] Having withdrawn the case from the bankruptcy court pursuant to 28 U.S.C. § 157(d), the district court granted summary in favor of the Trustee on this issue. The Spangler entities appeal.

## I. **BACKGROUND**

[1] This court is simultaneously addressing that larger litigation in Appeal Nos. 96-6845 and 96-6846. There the district court entered final judgment rejecting the Trustee's claim that the proceeds of the BNL letter of credit were fraudulently transferred to the Spangler entities. In an opinion published simultaneously with this opinion, we remand the fraudulent transfer claim for trial. The issues resolved in this case (relating to the Spangler entities' security interest in the BNL proceeds) may be relevant on that remand.

* The Honorable John H. Moore, II, Senior United States District Judge for the Middle District of Florida, sitting by designation

The debtor, XYZ, entered into a contract with Machinery Trade Company ("Machinery Trade") whereby XYZ agreed to build a plant in Iraq to manufacture carbide cutting tools. The total amount of the contract price was approximately $14,000,000. The contract required Machinery Trade to post a letter of credit in favor of XYZ in the full amount to be due XYZ under the contract. Machinery Trade arranged for the issuance of this letter of credit through Banco Nazionale del Lavoro (referred to as "the BNL letter of credit").

Performance on the construction project began in early 1989, and Machinery Trade made regular progress payments through the BNL letter of credit. In November 1989, however, BNL stopped making payments to XYZ and filed a declaratory judgment action in federal court in Atlanta stating that it was no longer liable under the BNL letter of credit. XYZ counterclaimed, asserting that BNL had breached the terms of the BNL letter of credit by refusing to honor XYZ's draws. On July 21, 1993, the district court in Atlanta entered a memorandum opinion finding in favor of XYZ against BNL in an amount exceeding $2,000,000. In other words, the court concluded that XYZ had performed construction work under the contract, had presented appropriate documentation entitling it to draw on the BNL letter of credit, but BNL had erroneously refused to honor XYZ's draws.

Thus, well before November 1993, it was established that XYZ had performed the conditions of the letters of credit, i.e., had earned the right to payment under the BNL letter of credit. In November 1993, the Spangler entities first acquired a perfected

3

security interest in the proceeds of the BNL letter of credit to secure obligations in favor of the Spangler entities which XYZ had incurred in connection with financing arrangements undertaken early in the construction project.[2] The district court construed § 5-116(2) to permit the assignment of a security interest in the proceeds in the letter of credit only <u>before</u> performance of the conditions of the letter of credit. Thus, the district court construed the statute to preclude assignment of a security interest in the proceeds of the letter of credit if the right to payment under the letter of credit had already been earned. Because XYZ's assignment of a security interest in the proceeds of the BNL letter of credit was not perfected until November 1993, at which time XYZ's right to payment under the letter had already been earned, the district court held that the assignment was invalid. We disagree and reverse.

## II. **DISCUSSION**

---

[2] Our statement in text, that the Spangler entities first acquired a perfected security interest in the proceeds of the BNL letter of credit in November 1993, reflects our agreement with the district court's holding that the Spangler entities failed to adduce evidence sufficient to create a genuine issue of fact to support the Spanglers' assertion that they received delivery and possession of the BNL letter of credit earlier than November 1993. XYZ, acting through its officer Muscarella, actually executed a document purporting to assign the BNL letter of credit to the Spangler entities at an October 1988 closing of the financing arrangements. However, we agree with the district court that the summary judgment record is clear that XYZ did not deliver possession of the BNL letter of credit to the Spangler entities. Rather, the record is clear that XYZ retained possession of the letter of credit until November 1993. Section 5-116(2)(a) expressly provides that "the assignment is ineffective until the letter of credit or advice of credit is delivered to the assignee which delivery constitutes perfection of the security interest under Article 9."

4

UCC § 5-116(2)[3] provides in relevant part:

(2) Even though the credit specifically states that it is nontransferable or nonassignable the beneficiary may before performance of the conditions of the credit assign his right to proceeds. Such an assignment is an assignment of an account under Article 9 on Secured Transactions and is governed by that Article except that

     (a) the assignment is ineffective until the letter of credit or advice of credit is delivered to the assignee which delivery constitutes perfection of the security interest under Article 9; . . . .

For a number of reasons, we reject the holding of the district court that an assignment of the proceeds of the letter of credit is valid only if the assignment occurs before performance of the conditions of the credit, i.e., before the right to payment under the letter of credit has been earned. Contrary to the argument of the Trustee, the language of the statute does not say that there can be no valid assignment after the right to payment has been earned. Rather, the statute merely says that there may be an assignment before the right to payment has been earned. To construe the statute as the Trustee urges, and as the district court held, one would have to draw a negative inference. However, § 5-102(3) expressly disavows the drawing of such negative inferences. Section 5-102(3) states that "[t]he fact that this Article states a rule does not by itself require, imply or negate application of the same or a converse rule to a

---

[3] The Spangler entities make a choice of law argument for the first time on appeal, arguing that UCC § 5-116(2) is not the controlling law in this case. However, the Spangler entities concede that the case was litigated in the district court on the understanding that § 5-116(2) controls. The understanding was not unreasonable, as § 5-116(2) was applicable in one or more of the states whose law was likely to govern. Accordingly, we decline to entertain this new choice of law argument. On this issue, the law of this case is that § 5-116(2) controls.

5

situation not provided for . . . ." Section 5-116(2) focuses only on the situation of an assignment occurring before the right to payment has been earned. The situation involving an assignment after the right to payment has been earned is simply "a situation not provided for." Pursuant to § 5-102(3), we feel no obligation to draw a negative inference in this "situation not provided for."

Indeed, the most reasonable explanation for the fact that the statute focuses on the situation of an assignment before the right to payment has been earned is found in the law antedating the UCC. The common law predating the UCC recognized that the proceeds of a letter of credit could be assigned after the right to payment had been earned, while such prior law was unclear with respect to assignability before the right to payment was earned. See Evansville Nat'l Bank v. Kaufmann, 93 N.Y. 273, 277-78 (1883) (stating that, when a letter of credit names a specific beneficiary, the beneficiary may not assign the right to the proceeds until the beneficiary has complied with the conditions of the letter of credit, thus giving rise to the right to payment). We believe that § 5-116(2) serves only to clarify the law so that a beneficiary may assign its rights to proceeds even before the right to payment has been earned. As thus clarified, under § 5-116(2), a beneficiary may always assign its right to proceeds, either before or after the right to payment has been earned. See Clark, The Law of Secured Transactions, ¶ 7.14[1] (rev. ed. 1993) (providing that "the beneficiary may always assign its right to the proceeds" of a letter of credit, and that, "[u]nder § 5-116(2), the beneficiary of a letter of credit may assign proceeds of the letter to a financing bank even before

6

performance of the underlying contract").

Comment 3 to § 5-116 supports this explanation. Comment 3 reads: "Subsection (2) makes clear that . . . the assignability of proceeds in advance of performance cannot be prohibited. . . . In this respect the letter of credit is treated like any other contract calling for money to be earned. See Section 9-318 generally and Section 2-210 as to sales contracts." Because both of the referenced sections reflect a strong policy of the free transferability of a person's right to receive payment, the Comment's statement that the letter of credit "is treated like any other contract calling for money to be earned" provides a strong implication that § 5-116(2) intends for the proceeds of letters of credit to be freely assignable, both before and after the right to payment has been earned, as is the case in the situations addressed by the referenced sections. In light of prior law, and in light of Comment 3, we believe that the statute's focus on the situation involving an assignment before the right to payment has been earned was simply meant to clarify the law, making it clear that the law recognizes assignments not only after the right to payment has been earned, but also before.

The Trustee has cited no case holding that the beneficiary of the proceeds of a letter of credit cannot validly assign same, creating a security interest in same, after the right to payment has been earned. The Trustee has cited no such case, and our research has uncovered none. Nor can we think of any policy reasons which would suggest that the law should recognize such assignments before the right to payment has been earned, but not after the right to payment has been earned. Indeed, as the pre-UCC law

7

suggests, it would seem that the viability of assignment is even clearer after the right to payment has been earned than it is before. Moreover, the UCC's policy of free transferability of a person's right to receive payment, see UCC § 9-318, comment 4, would suggest that policy reasons support free transferability at any time.

III. **CONCLUSION**

For the foregoing reasons, we hold that UCC § 5-116(2) permits the assignment of a security interest in the proceeds of a letter of credit either before or after the right to payment under the letter of credit has been earned.[4] Accordingly, the judgment of the district court is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.

---

[4] The Trustee's argument based on § 5-116(1) is without merit and warrants no discussion. The Spangler entities do not claim an assignment of the right to draw upon the letter of credit, and thus § 5-116(1) is inapplicable.

8