EDWARD L. OPPENHEIM and Others, Respondents, *v.* JAMES M. WATERBURY and Another, Appellants, Impleaded with Another.

*Stock purchase with an agreement for guaranty — the purchase a good consideration for the guaranty thereafter given — ambiguous language construed in the light of surrounding circumstances.*

Stock was purchased by one person for another upon the condition that the latter was to obtain a guaranty in respect thereto from certain third persons ; but such guaranty was not delivered to the person purchasing the stock until some days after the purchase thereof.

*Held,* that the purchase of the stock and the guaranty were parts of one and the same transaction and that the purchase of the stock was a sufficient consideration to sustain the guaranty.

When the language of a guaranty is ambiguous and does not furnish conclusive evidence of its meaning, the court is entitled to look at all the circumstances of the case and arrive at the intention of the parties from such sources of information.

APPEAL by the defendants, James M. Waterbury and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 27th day of November, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit.

*William B. Hornblower,* for the appellants.

*Otto Horwitz,* for the respondents.

O'BRIEN, J. :

This action was brought by plaintiffs, who, under the firm name of E. L. Oppenheim & Co., were engaged in business as stockbrokers in the city of New York, against the defendants Waterbury and Loper as alleged guarantors, and one Matthew Griffin as principal debtor. The latter, though named as a party, was never served with the summons and complaint, and has not appeared.

On the trial it appeared that on April 3, 1893, Griffin asked the plaintiff E. L. Oppenheim whether he was willing to buy and carry

for him 500 shares of Cordage stock under the guaranty of the defendants Waterbury and Loper. Though at first expressing an unwillingness, upon the statement of Griffin that the proposed guarantors were perfectly responsible Oppenheim finally consented. Griffin thereupon handed him a slip of paper, showing the report of a broker of the purchase of 200 shares of Cordage stock which Griffin had given an order to another broker to buy, and said to Oppenheim, "When will you compare those 200 shares?" Oppenheim testified that "comparing stock" meant stepping into the shoes of the first broker that had made the purchase. "In other words, if the party wishing to buy stock gives a broker the direction to buy for E. L. Oppenheim & Co., that broker stands still the risk of it until I confirm it by comparing the stock. Then it becomes my purchase." Oppenheim took this paper, and Griffin said he was going to buy the other 300 shares in the same way. Oppenheim then said: "You bring me a memorandum of the other 300 shares, and I will make out a notice and you take it to Waterbury & Loper and you will have it endorsed, and then it will be all right." The plaintiffs communicated with a broker named Prentice, who had purchased for Griffin on the third of April, about comparing the stock, and then prepared the written guaranty sued upon, which is as follows:

"OFFICE OF E. L. OPPENHEIM & Co.,
"35 NEW ST. & 4 EXCHANGE COURT,
"NEW YORK, *Apl. 3rd*, 1893.

"Mr. MATTHEW GRIFFIN :

"We have bought for your account and risk:

| No. shares. | Description. | Price. | Time. | Firm name. |
|---|---|---|---|---|
| 200 | N. C. O. Com. | 68¼ | Reg. | A. L. Norris. |
| 200 | " | 68¼ | " | Haight & Jewett. |
| 100 | " | 68⅜ | " | Beebe & Van S. |

"NEW YORK, *April 3d.*

"For value received, we hereby guarantee this account.

"J. M. WATERBURY.
"G. WEAVER LOPER.

"Stocks or bonds sold 'short' will be borrowed for your account and risk.

"E. L. OPPENHEIM & Co.,
"per A. H."

It thus appears that on April third, Prentice purchased 500 shares of Cordage stock by the order of Griffin. In the course of the day the purchases were compared by the clerk of the plaintiffs whose business it was to do so; and the next day, April fourth, the stock was delivered and paid for. The guaranty was not actually delivered until April fifth, when Griffin brought it to the plaintiffs, signed by the defendants Waterbury and Loper. In explanation of the delay, Oppenheim testified that Griffin had informed him that he obtained the guaranty on the third, and had gone to plaintiffs' office after three o'clock, but finding that Oppenheim had gone home, he did not care to give the guaranty to anybody but him, so took it away again; and that on the fourth, when this conversation was had, he then claimed that he had not the guaranty with him, having changed his coat and left it in another, but that he would bring it down the next morning, which he accordingly did and delivered it to Oppenheim. That a loss occurred, and that plaintiffs called on Griffin to take up the stock, and subsequently on the defendants Waterbury and Loper for additional margin, and that upon their refusal to do anything in regard to the stock, it was sold and a loss resulted, are not disputed. The propriety and regularity of the sale of the stock being conceded, and the jury having disposed of the question as to whether the plaintiffs were interested with Griffin in the purchase, these matters are no longer the subject of contention, the questions arising upon this appeal being ones of law as to the validity of the guaranty itself and the admissibility of certain testimony.

It is contended that there was no consideration for the alleged contract of guaranty. This is sought to be supported by the argument that at the time the paper was signed by Waterbury and Loper the plaintiffs had already purchased the stock, and as they made no agreement with Griffin to carry it for any definite period of time, there was no consideration for the guaranty as between plaintiffs and the guarantors; that there could be but two possible considerations, either an actual purchase of the stock on the faith of the guaranty or a binding agreement to carry the stock for a definite time on the faith of the guaranty; and that neither of these was, in fact, shown to exist. This argument is claimed to be upheld by several cases cited, which go to the extent of holding that if the debt or obligation be first incurred or completed, there must be a new consideration for

the promise to guarantee that debt ; and appellants refer to the rule as laid down in Brandt on Suretyship and Guaranty (§ 17), that "Where the consideration between the principal and creditor has passed and become executed before the contract of the surety or guarantor is made, and such contract was no part of the inducement to the creation of the original debt, such consideration is not sufficient to sustain such contract." This section is but a corollary of what is expressed in section 15 of the same work, which reads : "Where a promise that a surety or guarantor will become liable is part of the inducement on which the creditor acts in creating the original debt, this is a sufficient consideration to support the contract of the surety or guarantor who subsequently signs." To sustain this last proposition of law we are referred to many cases, but we think that of *McNaught* v. *McClaughry* (42 N. Y. 22), which is cited with approval in *Erie County Sav. Bank* v. *Coit* (104 N. Y. 537), sufficiently evidences the law of this State. There a principal executed and delivered a note to a creditor, which specified no time of payment, and at the same time agreed that he would procure B. to sign as surety if at any time the creditor should deem himself insecure. Afterwards the creditor returned the note to the principal, with the request that he would get B. to sign it, which he did, and B. was held liable. As said in the course of the opinion in that case : "The authorities are clear upon the two propositions involved in the question : 1. If Abram had given his note to the plaintiff, and the same had been accepted in performance of the contract without further condition, and the note was yet unmatured, the obtaining an additional indorser would have been a gratuitous act on the part of Abram, and the indorser would not be bound. He would not be bound, not because there was no direct consideration moving to himself, but because there was no sufficient consideration moving to his principal. On the other hand, if Abram had originally agreed with the lender that he would obtain the new indorser, and had obtained the money upon the faith of that promise, then his finding the additional indorser was based upon a valid consideration, and the indorser was held by his signature."

The testimony here clearly shows that the stock was purchased upon the condition that the plaintiffs were to receive the guaranty of the defendants. In fact, the defendants' guaranty and the purchase

of the stock were parts of one and the same transaction, and we think, upon such facts, the purchase of the stock was consideration for the defendants' guaranty. It clearly appears that plaintiffs entered into the transaction entirely on the faith of the proposed guaranty. Undoubtedly the plaintiffs ran the risk of the failure of Griffin to perform by obtaining such guaranty; but when secured, it related to the original agreement between the parties, became a part and parcel of the transaction, and thus made the consideration that moved to Griffin move as well to them.

In thus considering the question we have taken the view most favorable to the appellants, that the guaranty, though originally promised by Griffin, was a transaction completed before it was delivered. If it had not been forthcoming, it would have been entirely within the right of the plaintiffs at once to sell the stock, because their purchase was conditional upon Griffin's promise to secure the guaranty. Until this was delivered to plaintiffs, the transaction was incomplete, so far as making Griffin the purchaser, and the effect of giving the guaranty was to alter the position of the plaintiffs from that of unconditional to conditional holders; and such an alteration in their position, made upon the faith of the guaranty, was a sufficient consideration to support the defendants' promise. We think, too, that the respondents correctly argue that the evidence warrants the inference that plaintiffs offered to purchase the stock upon Griffin's promise to obtain the guaranty. In that event, when Oppenheim had purchased, Griffin became bound to procure the guaranty. The plaintiffs had a contract right against the principal debtor. Upon the guaranty being given, that right was extinguished, and the guaranty was given for the express purpose of extinguishing that right.

Another contention of the appellants is, that the contract of guaranty is void under the Statute of Frauds; that it being a "special promise to answer for the debt, default or miscarriage of another," there is no sufficient "note or memorandum thereof" in writing to comply with the statute. (2 R. S. 135, § 2, as amended by the Laws of 1863, chap. 464.) We think the writing in itself sufficient; but, as said in *Evansville Bank* v. *Kaufmann* (93 N. Y. 281), "When, therefore, the language of a guaranty is ambiguous and does not furnish conclusive evidence of its meaning, we are entitled

to look at all of the circumstances of the case and arrive at the intention of the parties from these sources of information." Whatever ambiguity may exist, therefore, was cleared up by the evidence introduced, which, under the authorities, we think was for that purpose competent. As shown by the writing itself and by the testimony, what was guaranteed was the account and whatever might result therefrom; and, therefore, it is not sound nor logical to argue that, because no definite time was fixed during which the stock was to be carried, no consideration was expressed, the carrying of the account being a mere incident, and whether it was for a definite or an indefinite time was entirely immaterial. The loss that resulted flowed from the failure of the principal debtor to pay for the stock, and the defendants could only be relieved of their liability as guarantors when the principal debtor paid the purchase price or satisfied the account.

The other points raised as to the insufficiency of the writing to satisfy the Statute of Frauds, we think are met by the argument presented by the respondents.

Other exceptions relied upon relate to alleged errors of the court in admitting in evidence, over the defendants' objection, the declarations of Griffin as against his co-defendants. In the author already referred to (Brandt on Suretyship and Guaranty, § 627), it is said that "When the declarations or admissions of the principal are made in the course of the performance of the business for which the surety is bound so as to become a part of the *res gestœ*, they are evidence against the surety." If we accept this as a correct statement of the law, it was proper to allow plaintiffs to show just what was done by Griffin in carrying out his promise to deliver the guaranty; and as all the declarations made by him were in the course of and before the delivery of such guaranty, we do not think it was error to admit them. But taking the contract between the parties and what thereafter followed, in connection with the purchase of the stock by plaintiffs, and the subsequent delivery of the promised guaranty by Griffin on the fifth of April, we think there was sufficient evidence to justify the disposition made by the trial court even though we exclude all the evidence objected to, introduced on the part of plaintiffs explanatory of their failure to receive the contract of guaranty before the fifth, and consisting of statements and declarations made by Griffin to Oppenheim.

Upon the merits, the plaintiffs were entitled to recover, and, there being no valid legal objections presented, we think the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.