(96 App. Div. 401.)

### HELIOS–UPTON CO. v. THOMAS et al.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. GUARANTY—CONSIDERATION.

    A written contract of guaranty of payment of the price of articles sold is not without consideration because they were delivered prior to its execution, a parol contract to give a guaranty having been made prior to the shipment.

2. STATUTE OF FRAUDS—SUFFICIENCY OF MEMORANDUM—GUARANTY.

    Plaintiff's letter to defendants: "In accordance with our understanding with you, we have shipped G. five of our No. 3 Storage Batteries. These batteries are our property and are to remain so until paid for, it being understood that you agree that we shall be paid for these five batteries at the rate of $498 each delivered in N. Y., sixty days after date of shipment," provided they are then "in good operative condition;" and defendants' reply: "We are in receipt of your favor of March 2nd regarding purchase of five No. 3 sample batteries and your understanding is the same as our own"—is a sufficient memorandum, considering the contract as a guaranty, to satisfy the statute of frauds.

3. GUARANTY—CONSTRUCTION.

    A contract of guaranty of the purchase price of storage batteries, conditioned that the batteries be in good operative condition 60 days after

---

¶ 1. See Guaranty, vol. 25, Cent. Dig. § 16.

shipment, does not relieve the guarantors of liability where the fact of the batteries not being in good operative condition at the stipulated time is attributable solely to misuse by the purchaser.

4. SAME—PLEADING AND PROOF—VARIANCE.

Plaintiff in an action on a guaranty of the purchase price of storage batteries, conditioned that they be in good operative condition 60 days after shipment, though alleging that they were then in good working order, is not precluded from recovery by evidence that they were in a defective condition caused solely by misuse of the purchaser; they being in good working order within the meaning of the contract—that is, so far as their manufacture and practicability were concerned.

5. PARTIES—VARIANCE.

The variance between pleading and proof is not so material as to justify a reversal of a judgment for plaintiff against the members of the firm of T. & P., though E. was made a party defendant; his name appearing as a member of the firm on the letter head on which the letter of T. & P., forming part of the contract, was written, and the evidence showing that E. was not a member of the firm when the contract was made, but was a member prior and subsequent to that time, whereupon the action was dismissed as to him.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Helios-Upton Company against Orlando F. Thomas and another. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Alfred H. Holbrook, for appellants.

Herbert C. Smyth, for respondent.

LAUGHLIN, J. The plaintiff was a corporation engaged in the manufacture and sale of storage batteries. Its plant was in the city of Chicago. In the latter part of February, 1901, the General Carriage Company, a corporation engaged in the business of letting electric automobiles for hire in the city of New York, negotiated the purchase of five No. 3 storage batteries of the plaintiff, the purchase price of each being $498. The appellant Orlando F. Thomas, the treasurer of the General Carriage Company, conducted these negotiations in its behalf. He and the appellant Post were then copartners as stockbrokers under the firm name of Thomas & Post. The General Carriage Company desired to make the purchase subject to trial, and on credit. The information which the plaintiff had concerning the financial condition of the General Carriage Company rendered it inadvisable to make the sale on these terms; and its representative so stated to Thomas, and suggested that, if the firm of Thomas & Post would guaranty the payment, the plaintiff would make the sale. Thomas agreed that such guaranty would be given by his firm. By the terms of sale, the batteries were to be paid for at the expiration of 60 days, provided they should then be in good operative condition. Part of the batteries were shipped from Chicago on the 19th, and the remainder on the 22d or 23d of February, 1901, and they were delivered to the purchaser in New York about

two weeks later. · On the 2d day of March, 1901, the plaintiff wrote
the firm of Thomas & Post as follows:

"New York, March 2, 1901.

"Messrs. Thomas & Post, 71 Broadway, N. Y.—Gentlemen: In accordance
with our understanding with you, we have shipped the General Carriage Com-
pany five of our No. 3 Storage Batteries. These batteries are our property
and are to remain so until paid for, it being understood that you agree that
we shall be paid for these five batteries at the rate of $498.00 each delivered
in New York, sixty days after date of shipment, providing the batteries are
at that time in good operative condition. Kindly confirm this understanding
to 197 Water Street, New York.

"Yours truly,                                                    Helios-Upton Co.
"King Upton."

Thomas & Post replied as follows:

"New York, March 6, 1901.

"Helios-Upton Company, 197 Water Street, New York City—Gentlemen: We
are in receipt of your favor of March 2nd regarding purchase of five No. 3
sample batteries and your understanding is the same as our own.

"Yours truly,                                                    Thomas & Post."

It is alleged that the batteries were in good operative condition
after the expiration of 60 days, and that the General Carriage Com-
pany refused and neglected, after demand, to pay therefor. The
plaintiffs seek to recover the value of the batteries, together with in-
terest, of the members of the firm of Thomas & Post, upon the
contract evidenced by these letters. The appellants contend that the
contract does not constitute a sufficient memorandum in writing to
take the case out of the operation of the statute of frauds, and is
not enforceable. The complaint was framed and the action was
tried upon the theory that the contract was a guaranty. We are of
opinion that the action might well have been maintained on the
theory that this was an original promise, and that the judgment could
be sustained upon that view. However, considered as a contract of
guaranty, the memorandum in writing was sufficient, within the stat-
ute of frauds. The written contract is not without consideration or
invalid merely because the property had been delivered prior to its
execution. The parol contract to give a guaranty was made prior
to the shipment, and, it having been subsequently reduced to writing
to enable proof thereof to be made, that is sufficient. Ward v. Has-
brouck, 44 App. Div. 32, 60 N. Y. Supp. 391; Oppenheim v. Water-
bury, 86. Hun, 122, 33 N. Y. Supp. 183; Smith v. Molleson, 148 N.
Y. 241, 42 N. E. 669. The consideration, although not definitely
stated, may fairly be inferred from the written contract. It is mani-
fest that it was a guaranty of payment, and not of collection, so that
the plaintiff was not obligated to proceed against the General Car-
riage Company.

The principal contention of the appellants is that the rule of strictis-
simi juris applicable to the construction of contracts of surety and
guaranty relieves them of liability unless the batteries at the expiration
of the period specified were in fact in good operative condition, even
though their not being so was attributable solely to misuse by the
purchaser. If they are right in this contention, the judgment cannot
· be sustained, for it is undisputed that at the expiration of 60 days the

batteries were not all in good operative condition. The learned counsel for the respondent rightly contends that this would be an unreasonable construction of the contract. The storage capacity of the batteries was 100 amperes, said to be sufficient to propel an automobile, of size suitable for the battery, 25 miles. The evidence on the part of the plaintiff showed that the batteries, having been properly tested and found to be of the required capacity, were shipped in good order, and, if properly used, would have remained in good order for a much longer period than 60 days—in fact, for a year or more. The representatives of the General Carriage Company were verbally informed that the batteries should be charged and recharged at an amperage not greater than 25 amperes per hour, and of the destructive effect of charging them at a higher amperage or more rapidly, and printed instructions to the same effect accompanied the shipment. The plaintiff gave evidence tending to show that the batteries were frequently charged by the General Carriage Company at an amperage much higher than 50 amperes per hour; and the evidence shows without substantial controversy that, while the batteries were in use during the trial period, they were frequently, if not customarily, charged by the employés of the purchaser at a higher amperage per hour than the maximum rate specified in the printed and verbal instructions. The evidence is also practically undisputed that the effect of charging batteries at a higher rate than that for which the construction of the apparatus is suitable is that the active material in which the current is stored will be separated and dropped out of place, thus reducing the capacity of the battery. The evidence introduced on behalf of the plaintiff, which was controverted by the defendants, tended to show that this was the condition in which the batteries were found after the expiration of the trial period, and that it was caused by overcharging contrary to the instructions, but that otherwise the batteries had been properly constructed, and were in proper condition. The learned court submitted to the jury the question as to whether the defective condition of the batteries was owing to faulty construction, or was caused by misuse on the part of the General Carriage Company. The jury, upon ample evidence, found in favor of the plaintiff.

The point is also taken that the plaintiff, having alleged that the batteries were in good working order at the expiration of the trial period, cannot be permitted to recover on the theory that they were not, but that it was through no fault of the plaintiff. Some of the evidence was received without objection on this ground being taken, but finally appellants objected, and I think they preserved their right to present the point. The complete answer to it is, however, that the batteries were in good working order, within the intent and meaning of the contract; that is, so far as their manufacture and practicability were concerned.

The appellants also claim that the time for performance of the original contract was extended by the parties without their knowledge or consent. This was also a question of fact, depending upon conflicting testimony, which was submitted to the jury.

Edward R. Thomas was joined as a party defendant upon the sup-

position that he was a member of the firm of Thomas & Post at the time they made the contract. It appears that the reply letter of Thomas & Post, forming part of the contract, was written on a letter head containing the name of Edward R. Thomas as a member of the firm. He had been a member of the firm prior to that time, but severed his connection with it for one year, and became a member again on the 1st day of April, after the making of the contract. These facts were proved upon the trial without objection, and were stated in substance by the appellants in their answer. Upon proof being made that Edward R. Thomas was not a member of the firm at the time, counsel for the plaintiff offered to discontinue as to him, and the complaint as against Edward R. Thomas was dismissed, with costs. The appellants do not claim, and, in the circumstances, could not well claim, that they were taken by surprise in having the action continued against them. It is difficult to see how they have been prejudiced, and we think, in the circumstances, the variation between the pleading and the proof is not so material as to justify a reversal.

It follows that the judgment and order should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.