JOHANNES A. JOHANNESSEN, Master of the Norwegian Steamship "Raylton Dixon," Respondent, *v.* JOHN MUNROE et al., Copartners Doing Business under the Firm Name or Style of JOHN MUNROE & Co., Appellants.

LETTER OF CREDIT — ESTOPPEL OF DRAWER FROM ASSERTING INVALIDITY. B., for a good and valuable consideration, obtained from J. M. & Co., bankers in New York, a letter of credit drawn upon their Paris house, in favor of J., and tendered it to J. in payment of a claim. Before accepting it, J. ascertained from J. M. & Co. that the letter was duly issued and that it would not be canceled, nor could payment of drafts thereunder be stopped, unless B. should notify them that it had fallen into improper hands. B. thereupon notified J. M. & Co. that he had delivered the letter of credit to J. in the regular course of business, who would avail of it accordingly. J. then accepted the letter of credit in payment and settlement of his claim against B., released the claim and abandoned proposed legal proceedings thereon. On the same day, J. M. & Co. instructed their Paris house to cancel the letter of credit, on the ground that it was not to be used in accordance with their understanding; and it was dishonored. Thereupon J. brought an action against J. M. & Co. to recover the amount of the letter of credit, as damages for its dishonor. *Held,* that the entire transaction presented all the elements of an estoppel which precluded the defendants from setting up a defense based upon the alleged invalidity of the letter of credit for any cause.

*Johannessen* v. *Munroe,* 9 App. Div. 409, affirmed.

(Argued March 13, 1899; decided April 18, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered Novem-

81

ber 11, 1896, affirming a judgment in favor of plaintiff entered upon a verdict.

This action was brought to recover, as damages for its dishonor, the amount of a letter of credit issued by the defendants in favor of the plaintiff, together with the protest fees thereon.

The facts, so far as material, are stated in the opinions.

*George A. Strong* for appellants. The defendants are not liable for the refusal to accept plaintiff's draft. They never promised that it should be accepted. (2 R. S. ch. 4, tit. 2, § 6; *Loonie* v. *Hogan*, 9 N. Y. 435; *Woods* v. *Wilder*, 43 N. Y. 164; *S. Nat. Bank* v. *Burt*, 93 N. Y. 233.) There can be no recovery on the letter of credit itself. (*Birckhead* v. *Brown*, 5 Hill, 634; *Union Bank* v. *Coster*, 3 N. Y. 203; *E. Nat. Bank* v. *Kaufmann*, 93 N. Y. 273.) There can be no recovery in this case upon any supposed estoppel. (*Johannessen* v. *Munroe*, 84 Hun, 594; *Tooker* v. *Arnoux*, 76 N. Y. 397; *Pope* v. *T. H., etc., Co.*, 107 N. Y. 61; *White* v. *Ashton*, 51 N. Y. 280; *Hollins* v. *Hubbard*, 91 Hun, 375; *Springsteen* v. *Powers*, 3 Robt. 483; *Sparman* v. *Keim*, 83 N. Y. 245; *Stitt* v. *Little*, 63 N. Y. 427; *Ranney* v. *People*, 22 N. Y. 413; *Barnard* v. *Campbell*, 55 N. Y. 456.)

*Wilhelmus Mynderse* for respondent. The document styled a letter of credit stands, under the peculiar circumstances of this case, purely as negotiable paper. (*Prehn* v. *Royal Bank*, L. R. [5 Ex.] 92; *Orr* v. *Union Bank*, 1 McQ. 513; Daniel on Neg. Inst. [3d ed.] § 1790.) Even if the instrument upon which this action is based is not deemed a negotiable instrument, the allegations and proofs establish that it was duly made for a sufficient consideration, and was acquired by the plaintiff for value. Either of these facts, apart from other considerations, would suffice to sustain the action. (*E. Nat. Bank* v. *Kaufmann*, 93 N. Y. 273; *Carnright* v. *Gray*, 57 Hun, 518; 127 N. Y. 92; *Underhill* v. *Phillips*, 10 Hun, 591; *Johannessen* v. *Munroe*, 84 Hun, 594; *Birckhead* v. *Brown*, 5 Hill, 634.) The defendants

are estopped from setting up any defense based upon allegations of the invalidity of the letter of credit for any cause. (*Boos* v. *W. M. L. Ins. Co.*, 64 N. Y. 236; *Thurber* v. *H. B., M. & F. R. R. Co.*, 60 N. Y. 326.)

BARTLETT, J.  This case has been twice tried.  At the first trial the complaint was dismissed as not stating a cause of action; the General Term reversed the judgment and ordered a new trial.  (*Johannessen* v. *Munroe*, 84 Hun, 594.)

Thereupon the complaint was amended by alleging that the defendants composed the firm of Munroe & Company of Paris, as well as John Munroe & Company in New York; and further by alleging that there was a good and valuable consideration from Carsten Boe to John Munroe & Co. at the time of the issuing of the letter of credit, the history and validity of which is involved in this action.

At the second trial, after all the proofs were in, the case was submitted to the jury and a verdict rendered for the plaintiff.  The Appellate Division has affirmed the judgment entered on the verdict, and the correctness of that affirmance is challenged by this appeal.

This case is very peculiar in its facts, and as plaintiff's recovery is wholly based thereon, it is necessary to clearly understand them.

The transactions involved took place in February and March, 1892.

The plaintiff at that time and for six years prior thereto had been master of the Norwegian steamship "Raylton Dixon," and the defendants, John Munroe & Co., were well-known bankers, doing business in the city of New York and at Paris, France, as Munroe & Co.

On the 26th of February, 1892, one Carsten Boe, a ship broker doing business in the city of New York, procured from the defendants, for a good and valuable consideration, their certain letter of credit upon the branch of their banking house in Paris in favor of the plaintiff, which reads as follows, viz. :

" No. 5687.  OFFICE OF JOHN MUNROE & CO., BANKERS,
                " No. 32 NASSAU STREET, ·
                        " NEW YORK, *February* 26, 1892.

" Messrs. MUNROE & CO.,
                        " Paris :

" GENTLEMEN.— We hereby open a credit with you in favor of Captain J. A. Johannessen, s/s Raylton Dixon, for fcs. 15,000, available in bills at 90 days date ; on acceptance of any bill or bills drawn under this credit you are to draw on Carsten Boe, New York, at seventy-five days date ; payable at the current rate of exchange for first-class banker's bills on Paris on day of maturity.  Commission is arranged.

" Bills under this credit to be drawn at any time prior to May 1, 1892.

                        . " Truly yours,
                                " JOHN MUNROE & CO."

" The bill may be availed of in sterling, if desired ; say £600 sterling.

                                " J. M. & CO."

Two days later, on February 28th, 1892, the plaintiff arrived in the port of New York from Europe on his steamship the " Raylton Dixon," to enter upon a charter effected by Carsten Boe & Co.  The charter was not fulfilled, and the plaintiff, as master, representing the ship and her owners, rechartered, incurring a loss of some thirty-seven hundred dollars, which was determined, upon the completion of the loading of the steamship under her new charter, March 9th, 1892.

In making a settlement with the plaintiff on March 10th, 1892, Carsten Boe offered to pay him five hundred dollars in cash, and tendered him the letter of credit referred to for six hundred pounds sterling.

· Before accepting this settlement the plaintiff, by his counsel and his ship broker, called on the defendants to ascertain if it was safe and prudent to accept the letter of credit as so much cash.

Mr. Kent, the counsel, and Mr. Hagaman, the ship broker, upon calling at the banking house of defendants, met Mr. Henry W. Munroe. The parties who engaged in this inter-'view do not agree as to all that took place, but as the jury have found upon conflicting evidence for the plaintiff, his version of the transaction must be adopted.

This interview need not be stated in detail, but it amounted to this in substance. Mr. Munroe stated that the letter of credit was issued by his house; that ninety days' drafts drawn under it would be honored by the Paris house; that the letter of credit would not be canceled unless Mr. Boe should tell him that it had fallen into improper hands; that Mr. Boe had made a satisfactory arrangement with him upon issuing the letter of credit; that it was not customary for them to cash drafts drawn on their letters of credit, but that he had no doubt plaintiff could go out in the street and sell his draft under his letter.

Either Mr. Kent, or Mr. Hagaman, said to Mr. Munroe that Boe had tendered the letter of credit to plaintiff in payment of a debt. Kent then stated to Munroe that his purpose in calling was to ascertain whether there was any way in which the drafts drawn under the letter of credit could be stopped; that Munroe said yes, if Boe should come to him and say the letter had fallen into improper hands.

Mr. Kent further said in substance that the only question was if Mr. Munroe could be assured by Boe that the letter of credit had fallen into proper hands there would then be no way in which payment of drafts thereunder could be stopped, to which Mr. Munroe assented.

This interview was about two o'clock in the afternoon of March 10th, 1892.

Thereafter Kent and Hagaman went to the office of plaintiff's counsel and sent for Boe, who made his appearance, when the transaction was closed between plaintiff and Boe and the latter wrote a letter to defendants which was immediately sent them by messenger and read as follows, viz. : ." I have to-day delivered to Capt. Johannessen your letter of credit

No. 5687 on your Paris house in the regular course of business and he will avail of it accordingly."

This communication advised defendants that the letter of credit was in proper hands and was sent to their office about three or half-past the same afternoon.

Thereupon defendants wrote Boe that they had reason to believe that the letter of credit was not to be used in accordance with their understanding and that they should instruct the Paris house by cable that night to cancel it.

Defendants also wrote a similar letter to counsel for plaintiff and the latter replied stating that plaintiff had accepted the letter of credit for its full face value, relying on their firm name and statement; that he would draw on the Paris house, and if credit was not honored he would hold them responsible.

All of this correspondence took place the same afternoon, March 10th.

This case is distinguishable from any of the authorities cited by appellants.

The plaintiff suing here is not a stranger to this transaction, but is the party in whose favor the letter of credit was drawn. The credit was obtained from defendants by Carsten Boe for a good and valuable consideration, as Mr. Munroe, when asked by Mr. Kent if Boe had made a deposit, or had secured them against this letter, replied, " He has made arrangements satisfactory to us."

Furthermore, the defendants were not drawing upon a third party or strangers in Paris, but on a branch of their own house.

We then have the plaintiff, who was described to the defendants by his representatives on March 10th as a sailor who was bound to exercise the utmost caution towards his owners to see to it that the letter of credit was all right and that he was sure to get his money under it, making the most thorough investigation as to its validity and receiving assurances that if delivered to the proper party drafts under it would be duly honored and that he could doubtless discount them in the street. In about an hour after receiving this information the

plaintiff settled his claim against Boe arising from the recharter of the ship and executed the following indorsement on the charter party :

"Received from Carsten Boe the sum of $500 and £600, under letter of credit, in full settlement of claim of the owners under this charter party, thereby releasing all parties interested from further liability thereunder."

The plaintiff here accepts the money and the letter of credit "in full settlement" and releases "all parties interested from further liability."

This closing language is broad enough to import release of third parties liable under the charter if such were the fact.

We are of opinion that this entire transaction, beginning with the issuing of the letter of credit and closing with the settlement referred to, presents all the elements of an estoppel, and defendants are precluded from setting up a defense based upon the alleged invalidity of the letter of credit for any cause. If it be the fact, as urged by the defendants, that the use of the letter of credit to pay the indebtedness incurred by the recharter of the ship was unauthorized, it was their duty to have canceled the credit on receiving information it was to be so used from Kent and Hagaman.

We have here the representation of certain facts by the defendants, with knowledge that plaintiff proposed to act thereon; the fact that he did so act and took the letter of credit and money in payment of his claim, releasing all parties from further liability. This constituted a taking of the letter of credit in good faith and for value. The plaintiff by the representations of defendants was induced to change his position, to give up his cause of action and proposed legal proceedings, to acknowledge full settlement and payment of his claim and to release all parties.

From the entire transaction it must be regarded as proved that the plaintiff took the letter of credit in payment as so much money. It is the fair and reasonable inference to be drawn from the surrounding circumstances as well as from the papers executed at the time.

The plaintiff would naturally have greater confidence in the credit of a well-known banking house like Munroe & Co. than in the financial ability of Boe, who had just defaulted in his charter contract.

We do not deem it necessary to pass upon the question discussed by counsel as to whether this letter of credit is to be regarded as negotiable or non-negotiable.

The peculiar facts of this case control the disposition to be made of it without regard to technical rules of the law merchant.

The plaintiff's proofs, which we are required to accept as true under the verdict of the jury, make this a single transaction. The defendants said to plaintiff, in substance, that a letter of credit had been issued by them for six hundred pounds in his favor, purchased by Boe, which would be paid in due course if he drew on the Paris house.

The plaintiff, relying on this statement, took the letter of credit for value from Boe as so much money, and now insists that the defendants occupy a position where in equity and good conscience they are estopped from a defense of any kind.

An action for damages was the proper remedy after defendants canceled the letter of credit by cable to their Paris house and subsequently refused to honor the plaintiff's draft.

The judgment appealed from should be affirmed, with costs.

GRAY, J. (dissenting). The letter of credit was a mere proposal to contract. (*Birckhead* v. *Brown*, 5 Hill, 634.) It was based upon certain representations of Boe, the party at whose instance it was issued, and when the defendants discovered that it was used by him for a different purpose than he had represented; namely, to make advances on freight and vessels in Europe, they had the right to recall it. It was not a negotiable instrument. (*Evansville Nat'l Bank* v. *Kauffmann*, 93 N. Y. 273, 287.) There was no estoppel by reason of what the defendants said with respect to their letter of credit, because it is clear that the plaintiff did not part with value on

the faith of it and did not change his position, when taking it for a precedent debt and in giving a simple receipt for the indebtedness to himself, which merely stated that it was a release. Plaintiff would still have had the right to hold Boe for his debt.

I think that the representations attributed to the defendants, with respect to the validity of the letter of credit, were quite consistent with its supposed use for the purposes stated by Boe, when he applied for it.

I must dissent from the conclusions of Judge BARTLETT.

All concur with BARTLETT, J., for affirmance, except GRAY J., who dissents on memorandum, and O'BRIEN, J., who concurs with GRAY, J.

Judgment affirmed, with costs.