In re FORSE et al.

(District Court, N. D. New York. December 12, 1910.)

BANKRUPTCY (§ 309*) — LIENS — MORTGAGE GIVEN BY PARTNER TO SECURE PARTNERSHIP DEBT.

Bankrupts contracted for the purchase of a stock of goods to be paid for in installments, being named in the contract as individuals and not as partners, although they were in fact partners. One of them also contracted to give, and did give, his personal bond secured by mortgage on his individual property to secure payment of the contract debt by which he bound himself, his heirs, executors, and administrators, to pay such debt to the mortgagee, his executors, administrators, or assigns. Under the law of the state, general partners were severally liable in equity for partnership debts. *Held*, that the mortgagor was not a surety for the debt, but a principal debtor, who had given the mortgage to secure his own debt, whether as partner or otherwise; also, that the contract and bond and mortgage were assignable before any default thereunder, and the assignee was entitled to enforce the mortgage as against the individual creditors of the mortgagor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 555–564; Dec. Dig. § 309.*]

In the matter of Amos L. Forse and George W. Roseboom, individually, and as members of the firm of Forse & Roseboom, bankrupts. Controversy over the title and right to certain surplus moneys arising on the sale in foreclosure of certain lands and premises owned by Amos L. Forse at the time of the bankruptcy amounting to about $962.20, and which is claimed by Wealtha A. Neff, the alleged owner of a subsequent mortgage on the said premises, and also by A. B. Packer, the trustee in bankruptcy of said bankrupts. Order in favor of mortgagee.

See, also, 182 Fed. 212.

H. C. Stratton, for claimant Neff.
Vere H. Multer, for trustee.

RAY, District Judge. On the 8th day of October, 1908, one Leon Y. Jones, who was in the possession and apparent owner of a stock of goods and certain so-called fixtures, personal property, in a store in Guilford, N. Y., as party of the first part, entered into a contract in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

writing with Amos L. Forse and George W. Roseboom, parties of the second part, which, so far as material here, reads as follows:

"This contract and agreement made and entered into this 8th day of October, 1908, by and between Leon Y. Jones of the town of Guilford, county of Chenango and 'state of New York, party of the first part, and Amos L. Forse and George Roseboom, both of the city of Binghamton, Broome county, New York, parties of the second part, in the manner following: The said party of the first part hereby agrees to sell and the said parties of the second part hereby agree to buy and purchase of the said party of the first part his stock of goods, store furnishings and fixtures formerly belonging to W. H. Neff & Son in the town of Guilford, Chenango county, New York, and they hereby agree to pay for said stock of goods the cost price, and they agree to pay for all fixtures such a sum as shall be agreed upon between the parties hereto, and if the parties hereto are unable to agree upon the price of said fixtures then the party of the first part shall pick a disinterested party and the parties of the second part shall pick a disinterested party to determine the value and price of such fixtures, and when the cost price of said stock of goods and the value of said fixtures is agreed upon then the said parties of the second part hereby agree to pay the total amount of the cost price of said stock and the agreed price of such fixtures to the said party of the first part as follows: $100.00 or more thereof on the 26th day of December, 1908, and $100.00 or more monthly thereafter until the said purchase price and interest thereon from date hereof is fully paid. * * * And the said Amos L. Forse for the purpose of securing the payment of the contract price of said goods and fixtures hereby agrees to execute, acknowledge and deliver a bond conditioned for the payment of the purchase price of said stock of goods and fixtures as herein provided, and that as a collateral security for the payment of said bond that he will execute and deliver to the said party of the first part his mortgage which shall cover all that tract or parcel of land situate in the city of Binghamton, Broome county, N. Y., * * * said mortgage to be given subject to one mortgage now a lien on said premises in the sum of $1,000 now held by Nettie R. Scott, and the other of said mortgages amounting to the sum of $300 held by Prudence A. Smith. Said bond and mortgage to be executed and delivered before possession of said stock of goods and fixtures is given by said party of the first part to the said parties of the second part."

On the same day the said Forse and his wife executed and delivered to the said Jones the bond and mortgage called for by the said agreement, and the goods and fixtures were appraised and the value agreed upon, and same were then delivered to said Amos L. Forse and George Roseboom. I find no reference to a firm or partnership in either the agreement of sale or in the bond or mortgage. On the 7th day of November, 1908, said Jones by instruments in writing assigned the said contract and agreement of sale and the title to the goods mentioned as fixtures and said bond and mortgage to the said Wealtha A. Neff for an adequate and valuable consideration. It is now said that she in fact owned said goods and fixtures, and that the sale was in fact made for her, and the agreement and bond and mortgage assigned for the reason they were in fact her property. However this may have been, Jones owed her for the goods and fixtures which he had purchased of her. The contract and bond and mortgage were assigned and turned over to her in payment of the debt if title to the goods and fixtures was in Jones.

The trustee in bankruptcy claims that on the face of the papers Forse was a mere surety for the copartnership of Forse & Roseboom; that his contract was that of a surety for that firm; that he could not

assign and convey title to the said bond and mortgage before default in payment on the contract or agreement of sale; that, as the assignment was made prior to any default in payment, Mrs. Neff took no title to the bond and mortgage and has none; and that the surplus money, proceeds of the sale of the real estate owned by Forse individually, belongs to the trustee of his estate in bankruptcy.

It is seen that, by the terms of the written contract of sale, Jones sold the goods and fixtures to Amos L. Forse and George Roseboom, who agreed to buy and purchase the same and to pay Jones therefor the sum thereafter fixed and agreed upon, viz., $2,481.25. No payment was due until December 26, 1908. There can be no doubt that this sale and delivery of the goods and fixtures created a debt for the sum of money due and owing to Jones from Amos L. Forse and George Roseboom. It is perfectly clear that the contract and agreement was assignable, as was the indebtedness created thereby. When the assignment of such contract was made and delivered, title to the contract and all sums of money agreed to be paid thereby—that is, the debt owing—passed to and vested in Wealtha A. Neff. Title to the fixtures was reserved, but care was taken in the assignment of the contract and agreement to convey title to the fixtures. So far as the passing of title to the debt is concerned, it is entirely immaterial that it was not expressed in the written agreement that the parties of the second part, said Forse and said Roseboom, would pay the purchase price to Jones and his executors, administrators, or assigns. Amos L. Forse was one of the purchasers of the stock of goods and fixtures, and he agreed as a condition of the delivery of the goods and fixtures that he would give the bond and mortgage on his own premises owned by him individually "for the purpose of securing the payment of the contract price of said goods and fixtures." He agreed to give the bond and mortgage for the purpose of securing the payment of the debt, and he did give the bond and mortgage; his wife uniting for that express purpose. There was no relation of trust or confidence existing or created by that contract and agreement between Jones and Forse, or between Jones and Roseboom, or between Jones and Amos L. Forse and George W. Roseboom.

Turning now to the bond and mortgage, we find that:

"I, Amos L. Forse, of the city of Binghamton, Broome county, New York, am held and firmly bound unto Leon Y. Jones of the town of Guilford, county of Chenango, New York, in the sum of four thousand nine hundred sixty-two 50/100 ($4,692.50) dollars to be paid to the said Leon Y. Jones or to his certain attorney, executors, administrators or assigns."

For the payment he bound himself and his heirs, executors, or administrators jointly and severally. Then followed the condition of the bond as follows:

"The condition of this obligation is such that if the above bounden Amos L. Forse, his heirs, executors or administrators, shall and do well and truly pay or cause to be paid unto the above named Leon Y. Jones, his certain attorney, executors, administrators or assigns, the sum of two thousand four hundred eighty-one and 25/100 dollars according to the terms of a certain contract dated October 8, 1908, by which the party of the first part agrees to purchase certain personal property and pay for the same as therein provided."

The condition was that he would pay to Jones or to his executors, administrators, or assigns the sum of $2,481.25 according to the terms of the contract and agreement before mentioned; that is, at the times and in the amounts mentioned. His engagement here is that he and his executors, administrators, or assigns will pay to Jones or to his executors, administrators, or assigns.

The mortgage recites that Forse and wife, in consideration of $2,481.25 duly paid, have bargained, sold, etc., and that by the said mortgage they do grant and convey to Jones, his heirs and assigns, all the real estate therein described. This is the real estate thereafter sold in foreclosure and from the sale of which the surplus moneys in question arose. The mortgage itself further recites:

"This conveyance is made as collateral to a certain contract by which the said party of the first part with another agrees to purchase certain personal property and pay for the same as therein provided, which contract is dated October 8, 1908. This instrument is subject to other mortgages aggregating to thirteen hundred dollars ($1,300)."

This is a plain declaration that the mortgage is collateral security for the payment of the sums of money agreed to be paid in and by the written contract and agreement and by which, says the mortgage:

"The said party of the first part (Amos L. Forse) with another (referring of course to Roseboom) agrees to purchase certain personal property and pay for the same as therein provided."

The mortgage further says:

"This grant is intended as a security for the payment of the sum of two thousand four hundred eighty-one 25/100 dollars according to the terms of the said contract between parties of October 8, 1908, and according to the condition of a bond this day executed and delivered by the said Amos L. Forse to the said party of the second part."

The mortgage then goes on to say that, in case of default in payment of the principal sum hereby intended to be secured or in the payment of the interest thereof, etc., it shall be lawful for the party of the second part, his executors, administrators, or assigns, at any time thereafter to sell the premises, etc.

I think this far from a contract of suretyship. Forse was one of the purchasers and one of the principal debtors. He agreed, as a condition of conveying the property delivered to himself and Roseboom, to execute and deliver the bond and mortgage covering his own property. He did execute such bond and mortgage and thereby bound himself and his executors, administrators, or assigns to pay to Jones or to his executors, administrators, or assigns the sums of money agreed to be paid in and by the said contract and agreement when due under the terms thereof; that is, $100 each month commencing December 26, 1908. In the first place, it is difficult to understand how Forse could become surety for himself, and, second, it is plain that, being one of the principal debtors, he assumed the payment of the entire indebtedness as between himself and Jones and gave the bond and mortgage as security for the payment of all the money to grow due under such contract. He explicitly agrees in both bond and mortgage to pay to Jones or to his executors, administrators, or assigns.

No copartnership is mentioned or referred to. Forse does not guarantee payment, but agrees to pay and binds himself to pay according to the terms of the contract.

In Evansville Nat. Bank v. Kaufmann et al., 93 N. Y. 273, 45 Am. Rep. 204, it was held that, until a right of action has arisen on a "special guaranty," such guaranty is not assignable. Assuming this to be the law, was this bond and mortgage a "special guaranty," assuming them to have constituted or amounted to a contract of guaranty merely? The contract promise and obligation are not restricted or limited to Leon Y. Jones. The promise and obligation of the guaranty is that Forse, his executors, administrators, or assigns, will pay to Jones, or to his executors, administrators, or assigns, all sums of money growing due on a certain contract for the sale of goods when due. Why was not this contract and obligation to pay money at a future day for goods sold and delivered assignable? It is unnecessary to say that the bond and mortgage could not be enforced by one to whom assigned unless such assignee also held the contract, or debt mentioned therein for the sale and purchase of the goods. The bond and mortgage were security for that debt or obligation and intended to be and so state. If the contract and debt evidenced thereby were assignable, then the bond and mortgage given to secure the payment of the debt were assignable also, and in all probability an assignment of the contract and agreement of sale would have carried the bond and mortgage as an incident without formal assignment inasmuch as the bond and mortgage, even if held to be a guaranty, ran to the assignee of Forse.

In Evansville, etc., v. Kaufmann, supra, Kaufmann and Blun sent Bingham Bros. a letter reading as follows:

"New York, Dec. 29, 1874.

"Messrs. Bingham Bros., Evansville, Ind.—Dear Sirs: Any drafts that you may draw on Mr. A. Feigelstock of our city, we guarantee to be paid at maturity.      Truly yours.                         Kaufmann & Blun."

Bingham Bros. thereupon drew two drafts on said A. Feigelstock and had them discounted by the Evansville National Bank at Evansville, Ind., leaving the letter of credit with the bank and upon the security of which the bank discounted the drafts. The bank furnished the consideration. The bank thereupon forwarded such drafts to Feigelstock, the drawee, for acceptance and payment, by whom they were dishonored. The bank thereupon sued Kaufmann & Blun on the guaranty.

The Court of Appeals held this to be a special guaranty, one directed to Bingham Bros. only, and upon which they alone could act, one upon which the bank could not advance the money; that is, furnish the consideration, taking an assignment of the letter of credit as its security before the acceptance of the drafts by Feigelstock and then recover against the guarantor, Kaufmann & Blun, in case such drafts were not accepted and paid by Feigelstock. The court said:

"We have thus seen that no cause of action accrued to the plaintiff upon the guaranty for the reason that it is a special guaranty upon which the party addressed alone could act and acquire a cause of action."

The court also said:

"Of course, if the defendants (Kaufmann & Blun) have signed a guaranty, either general or special, upon a sufficient consideration, by which they have unqualifiedly promised to become liable for the payment of all such drafts as Bingham Bros. might thereafter draw on Feigelstock, their liability, however comprehensive, would not be affected by its imprudence. But such is not the contract under consideration."

The court also held there was no consideration so far as Kaufmann & Blun were concerned. The court also said:

"Guaranties are distinguished in the law as being either general or special, special guaranties being those which operate in favor of the particular persons only to whom they are addressed, while general guaranties are open for acceptance by the public generally."

Assuming the bond and mortgage executed by Forse and wife to Leon Y. Jones to be a special guaranty, it was certainly addressed to and ran to Leon Y. Jones and to his executors, administrators, and also to his assigns. It was clearly within the contemplation and agreement of the parties that Jones might and probably would sell and assign the contract and the debt evidenced thereby, and also the bond and mortgage given as security, inasmuch as those instruments themselves assert they are to secure the payment of the sums of money to become due and payable according to the terms of such contract, and the promise and agreement to pay runs not only to Jones, but to his assignee. I take it that, if Kaufmann & Blun had written Bingham Bros. that "any drafts that you or your assignee may draw on Mr. A. Feigelstock of our city we guarantee to be paid at maturity," the result would have been different. While such a guaranty would be special in that it would be addressed to a person certain and named and to any person to whom that person might assign it and to such persons only, and not to the public generally, still it could be acted on not only by the person to whom addressed by name, but by the person to whom that person should assign it.

In Evansville, etc., v. Kaufmann et al., supra, the court said:

"In the case of a special guaranty, however, the liberty of accepting its terms is confined to the persons to whom it is addressed, and no cause of action can arise thereon except by their action in complying with its conditions. Such a guaranty contemplates a trust in the person of the promisee, and from its very nature is not assignable until a right of action has arisen thereon, which may, like any other cause of action arising upon contract, be then assigned."

This is very far from holding that a contract of guaranty running to a person named and by its express terms to the assignee of such person may not be acted on by the assignee, or that a bond and mortgage given to secure the payment of the debt of a third person, which is not this case, may not be assigned with the debt before due and as an incident thereto, when made assignable by their very terms.

In Dibble, as Executor, etc., v. Richardson, as Executor, etc., 171 N. Y. 131, 63 N. E. 829, the wife gave a mortgage on her own property to secure a precedent debt of her husband, and this was well known to the mortgagee. In form she was the principal debtor. The Court of Appeals held she was liable as surety only. That is not this

case. Here, Forse was, at least, one of the principal debtors. He was personally liable for the entire debt, as we shall see. As a consideration for and as a condition of obtaining the property of Jones, he agreed to give and did give his personal bond and a mortgage on his individual property as security for the payment of the debt then presently incurred, not a precedent debt of another, or a precedent debt of his own. It is unnecessary to repeat here the conditions, provisions, and obligations of the bond and mortgage.

In Casey v. Gibbons, 136 Cal. 368, 68 Pac. 1032 (1902), it was held:

"Mortgage to Secure Debt of Another—Suretyship. Where the mortgage in suit was executed by a mother to secure the debt of her son to the plaintiff, but the mortgage shows that the mortgagor agreed to pay the amount stated in it, and the loan was made upon her faith and credit, she was herself a principal, and neither she nor the mortgage can be treated as surety for the debt of the son.

"Pleading and Proof of Suretyship. In order to charge the mortgagor as surety only, it was incumbent upon the defendants to aver and prove that the payee of the mortgage note not only knew of the fact of suretyship, but also consented to deal with her in that capacity."

It cannot be questioned that Forse is separately liable for the debt created by the contract and agreement of sale. He became liable by virtue of the contract itself and severally by virtue of the very terms of the bond. It is evident that on the faith of the liability of Forse and the obligation of his bond and the security of the mortgage given by him Jones parted with his property on credit, and that Forse assumed the position of principal debtor. Now, assume that Forse and Roseboom were partners and purchased the goods as such, and that such was the fact is shown by affidavit, and that Jones well knew that fact; still Forse and Roseboom are not only jointly but severally liable in equity for the goods purchased of Jones. Either could have been sued in equity and proceeded against before bankruptcy intervened. Partnership Law N. Y. (Consol. Laws, c. 39) § 6; Laws 1909, c. 44, § 6, formerly chapter 51, Gen. Laws (Laws 1897, c. 420, § 6, general provisions); Seligman v. Friedlander, 199 N. Y. 373, 92 N. E. 1047, reversing 138 App. Div. 784, 123 N. Y. Supp. 583, so far as it holds that partners are severally liable at law. By section 6, art. 1, of the partnership law of New York, as amended by chapter 420, Laws N. Y. 1897, which became a law May 13, 1897, a partnership, a general partnership, and a limited partnership are each defined, and section 6 provides:

"Liability of General Partner. Every general partner is liable to third persons for all the obligations of the partnership, jointly and severally with his general copartners."

While this provision is new in the partnership law, as set forth in the statutes, the Court of Appeals in Seligman v. Friedlander, 199 N. Y. 373, 92 N. E. 1047, reversing same case in 138 App. Div. 784, 123 N. Y. Supp. 583, on this point, held that the common-law rule is not changed thereby, and, as this is the construction placed on this statute of the state of New York by its highest court, the federal courts are bound by it. However, the Court of Appeals repeats and affirms the doctrine that in equity the general partners in a copartner-

ship are severally as well as jointly liable to creditors for the debts of the firm in certain cases and under certain circumstances, saying:

"At common law the liability of copartners was joint, although it was several in equity. The fundamental principle upon which the partnership relation is founded is that of a joint adventure, with joint ownership of assets and only joint liability for debts, unless the property held jointly is insufficient to pay the firm debts, or it appears that there can be no effective remedy without resort to individual property. Lawrence v. Trustees of Leake & Watts Orphan House, 2 Denio, 577; Voorhis v. Childs' Executor, 17 N. Y. 354; Richter v. Poppenhausen, 42 N. Y. 373; Pope v. Cole, 55 N. Y. 124 [14 Am. Rep. 198]."

Here the surplus money arising in the foreclosure is about $962.20; the balance of the debt due Jones and assigned to Neff about $1,900; and the partnership property only $205.10 after deducting expenses already incurred in these bankruptcy proceedings. A court of bankruptcy is a court of equity, and under all the facts of this case can it say that the trustee representing the general creditors is entitled to this surplus money, the surplus proceeds of the sale of the mortgaged real estate of Forse, one of the general partners, in the face of the bond and mortgage of Forse given to Jones and assigned to Neff with the debt they were given to secure, as against Mrs. Neff, who took same in good faith and paid a full consideration? The papers disclosed no partnership. Forse therein assumed the position and the liability of a principal debtor and bound himself as such. If he stood in the place of a guarantor, he guaranteed the payment, not the collection, of the debt due to Jones, not only to Jones, but to his assignee, Neff. His undertaking was unequivocal and unqualified, and not with Jones alone, but with his executors, administrators, or assigns. In terms he became bound to Neff as assignee of Jones. He procured the property to be delivered to himself and Roseboom on the promise to secure the payment of the debt therefor by his individual bond and to secure the payment of that bond by this mortgage on his real estate. Says Brandt on Suretyship & Guaranty, vol. 1, § 51 (3d Ed.):

"Where a surety binds himself in terms as principal in the obligation which he signs (meaning the obligation of suretyship), he will be held as principal and will be entitled to none of the rights of a surety."

However, I prefer to base the decision of this case on the propositions that the debt created by the sale of the property to Jones and evidenced by the written agreement was assignable and duly assigned to Neff; that Neff became the owner thereof; that the bond and mortgage created an individual and several obligation on the part of Forse, one of the principal debtors, to pay such debt when due; that such bond and mortgage were assignable by their terms and passed under the assignment executed by Jones to Neff with the contract itself and the debt represented thereby; and that such assignments were legally and properly made before any default in payment under the terms of the agreement of sale; also, that, assuming the bond and mortgage to have constituted a contract of guaranty, they were not limited except to Jones and his executors, administrators, and assigns, and hence the contract was general and assignable with the debt.

I think the following authorities decisive: Everson v. Gere et al., 122 N. Y. 290, 25 N. E. 492, affirming 40 Hun (N. Y.) 248; Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379; 1 Brandt, Suretyship (3d Ed.) §§ 58, 59.

In Stillman v. Northrup, supra, it was held:

"To limit a guaranty so that it shall not be transferable or assignable, its language must be express, and show clearly such to be the intent.

"Defendants assigned a bond and mortgage to N. The assignment contained a guaranty of the payment of the mortgage to N. Held, that this guaranty was not personal, and could be assigned with the bond and mortgage. Smith v. Starr, 4 Hun, 123, overruled.

"Also held, that the guaranty was not inoperative, because, by its terms, it was for payment of the mortgage, not the bond; that the intent was to guarantee the debt secured by the mortgage.

"N. executed an assignment of the bond and mortgage, which did not expressly assign the guaranty. He subsequently executed another including the guaranty. Held, that this was sufficient to vest the guaranty in the assignee.

"It seems an assignment of a bond and mortgage carries with it a guaranty of payment or collection, although not mentioned in the assignment."

In Everson v. Gere, 122 N. Y. 290, 25 N. E. 492, the syllabus is as follows:

"In an action upon a promissory note it appeared that the note was indorsed payable to J. C. & Co., 'or order,' and delivered to that firm, having attached to it a guaranty, signed by defendants, which recited that, for value received from J. C. & Co., they guaranteed to said firm payment of the note. Subsequently, and before maturity, J. C. & Co. indorsed and transferred the note to plaintiff 'without recourse,' and at the same time executed and delivered an assignment thereof, with the guaranty attached. Held, that the guaranty was general, not special and personal to J. C. & Co., and so was assignable; and that plaintiff could maintain an action thereon."

The court also said, after referring to E. N. Bank v. Kaufmann, supra:

"But in the case at bar the guaranty was attached to a promissory note previously executed and delivered. Its amount and time of payment was fixed. The defendants undertook to pay if the maker did not, and it could make no difference to them whether they paid to John Crouse & Co. or to some other person to whom they had transferred their claim."

Here the bond and mortgage accompanied the contract and agreement of sale and referred to it. The amount and time of payment were fixed and determined and the goods delivered, and Forse had them "with another." Here, as in Everson v. Gere, it was immaterial to Forse and to Forse & Roseboom whether he or they paid to Jones or to some one to whom Jones should transfer his demand.

As there is no question of fraud or preference involved here, it follows that Mrs. Neff is entitled to the surplus money in question, and the injunction will be dissolved.